## JOSHUA HUNT and another v. JOSHUA LATHROP, Jr.

A voluntary assignment, with preferences, of personal property situated in Massachusetts, valid in Rhode Island but void by the laws of Massachusetts, was made in Rhode Island by an insolvent firm composed of members who were citizens of that State, for the benefit of their creditors. After the assignees, who were also citizens of Rhode Island, had taken possession of the property, it was seized by a deputy sheriff in Massachusetts, as the property of the assignors, upon a writ of attachment issued against them out of the Superior Court of that state and delivered to him for service, in which the plaintiff was a citizen of Massachusetts, but the cause of action was a promissory note made by the assignors in Rhode Island to a citizen of Rhode Island who held it at the time of the assignment, and afterwards endorsed it, when overdue, to the plaintiff in the attachment suit. At the time of the attachment, the deputy sheriff was notified of the title of the assignees, by the person whom they had left in charge of the goods; and on the same day refused to permit one of the assignees to examine the goods attached. The next day, the goods were attached by the same deputy, as the property of the assignors, in another suit, brought against them in the same court by a citizen of Massachusetts, upon a debt due to him from the assignors prior to the assignment, in which the court overruled a plea in abatement filed by the assignors to the service of the writ, which set up that the property attached did not belong to them, and gave judgment against them,

Hunt and another *v.* Lathrop.

and the property was sold, partly under an order of a judge, as perishable, and partly upon an execution issued in the last named action,—the first having been abandoned,—and the proceeds applied by the deputy to the payment of a mortgage upon the goods attached made by the assignors, and the residue to the payment *pro tanto* of the execution. In trover against the deputy sheriff, by the assignees, *it was held,* that inasmuch as the assignment was valid in Rhode Island, and was executed in that State by citizens thereof, it conveyed the personal property of the assignors in Massachusetts, and that its validity could not have been questioned by the first attaching creditor, whose debt was a Rhode Island debt at the time of the assignment, and bound by it.

*Held,* further, that the title to the goods attached being thus in the assignees, as between them and the first attaching creditor, the taking by the deputy sheriff of the goods upon the first writ against the assignors was tortious, and whether he knew of the title of the assignees, or not, a conversion of the goods in itself; and that, notwithstanding the subsequent attachment of the goods upon a cause of action adjudged in Massachusetts to render them attachable as the property of the assignors, and the application of the proceeds of the goods under judgment to the payment of the debt of the second attaching creditor, the deputy sheriff was liable to the assignees for the value of the goods at the time of the first attachment, deducting therefrom the amount of the mortgage upon the goods paid out of the proceeds thereof, with interest, by way of damages, upon the balance, thereafter.

TROVER for certain white and colored cotton, and for certain woolen machinery and dyeing apparatus, all of the agreed value of $2587.50, brought by the plaintiffs, assignees of Hunt, Farnum & Co., under a voluntary assignment, with preferences, for the benefit of creditors, against the defendant, a deputy sheriff of the county of Bristol, in the commonwealth of Massachusetts, who had attached and taken said goods in Seekonk, Massachusetts, upon certain Massachusetts writs delivered to him for service.

Plea, the general issue.

A jury trial was waived by agreement of parties,.and the cause was submitted to the court upon the following agreed statement of facts :—

" The parties in this case agree, that on the 30th day of June, A. D. 1860, David Hunt and John Farnum, both citizens of Rhode Island, carrying on business in the City of Providence, and in Seekonk, in Bristol county, Massachusetts, as copartners, under the name and firm of Hunt, Farnum & Co., being insolvent, made an assignment of all their property, for the benefit of their creditors, a copy of which assignment is hereto annexed, marked ' A.' A portion of the property conveyed by the assignment was situated in Seekonk, and the rest in Providence. The plaintiffs

are the assignees named in said assignment, and under the same took possession of all the property of said Hunt, Farnum & Co.; Williams, one of the assignees, being a creditor, at the time, of said Hunt, Farnum & Co., included in the assignment. The assignees, after taking possession of the property in Seekonk, did not remove the same, but held possession of it until the 13th day of July, A. D. 1860, when the same was seized and taken from them by the defendant. The defendant was, at the time, a deputy sheriff within and for said county of Bristol, and duly authorized to serve writs within said county; and as such deputy, by virtue of a writ which, with the officer's return thereon, is annexed, marked 'B,' took the property aforesaid as the property of said Hunt, Farnum & Co., the defendants named in said writ. At the time of taking the property as aforesaid, the defendant was told by the keeper of the same that it belonged to the plaintiffs, as the assignees of Hunt, Farnum & Co.; and on the same day, after said attachment, Williams, one of the plaintiffs, saw the defendant at the mill in Seekonk, and informed him of the plaintiff's claim to said property, and asked to go into the mill and see the same, but was refused by the defendant. The property so taken is described in the return annexed to said writ, and has remained unmoved in the mill occupied by Hunt, Farnum & Co., in Seekonk, where it was at the time of the assignment, except the white cotton mentioned in said return, which was delivered to said assignees under said assignment, in the City of Providence, and by them carried to the mill in Seekonk,—a fact which was not known to the officer at the time of attaching or selling the same,—and said cotton, at the time of the attachment, was spread on the platform for drying. On the 14th day of the same July, another writ, a copy of which, with the officer's return thereon, and with a copy of the proceedings annexed thereto, is hereunto annexed, marked 'C,' was put into the hands of the defendant, and served by making a second attachment of the same property, then held by the defendant by virtue of the writ marked 'B.' At the time of the service of the writ marked 'B,' neither the officer, nor the plaintiff in said writ, had any knowledge that any other creditor of Hunt, Farnum & Co. intended to attach said property. On the 18th day of the same July, and while said

property was in the possession of the defendant, a notice and demand in writing, a copy whereof is hereunto annexed, marked ' D,' was delivered to him by the plaintiffs; and on the same day, the defendants in the writ marked ' B ' demanded a copy of the declaration in said action, and were notified by the plaintiff in said action that the same would not be entered in court, and said writ was then, and ever since has been, in the hands of the plaintiff in said action, and by his direction was not returned to court. The writ marked ' C ' was duly returned to court; and the answers in abatement therein, copies of which are hereto annexed, were overruled, and judgment recovered by the plaintiff in said action, at the March term, A. D. 1861, of the Superior Court, in said Bristol county, on which judgment execution duly issued, by virtue of which, said property, after satisfying the mortgage hereinafter mentioned, was applied in part satisfaction of said execution. The property attached as aforesaid, except the cotton above mentioned, was, at the time of said assignment and attachment, subject to a mortgage, a copy of which is hereunto annexed, marked ' E.' After the attachment on the writ marked ' C,' the mortgagee made a statement of his claim under the mortgage, and a demand of payment, a copy of which is annexed, marked ' F ;' and said claim was discharged by the plaintiff in said writ. The proceeds of the property attached as aforesaid, and sold on mesne process and on execution were insufficient to satisfy said mortgage and the execution. On the 16th day of the same July, the defendant made another attachment of the same property in his hands as aforesaid, by virtue of a writ in which George W. Brown was plaintiff, and the said Hunt, Farnum & Co. were defendants. Said writ was returnable to the September term of the said Superior Court, then next following ; was duly returned and entered in said court, and the defendants therein made the same answers in abatement as in the case of the second writ, above mentioned,—which answers were in like manner overruled by said court, as in the former case,—and at the March term of said court, A. D. 1861, the plaintiff recovered judgment against said defendants, for the sum of $830.72, and execution was duly issued from said court for said sum, and delivered to said officer, within thirty days from the date of said judgment. The plaintiffs in all

the writs aforesaid, served as aforesaid by the defendant, were citizens of Massachusetts and residents therein. The claim on which the writ marked ' B ' was founded was an overdue note, made and payable in Rhode Island to a citizen there, and endorsed to the plaintiff in said action after the assignment was made, by a citizen of Rhode Island. Most of the creditors of Hunt, Farnum & Co., named in the assignment, were residents of Rhode Island. The parties accept the appraisement of the appraisers appointed by the defendant, a copy of whose certificate is annexed to the copy of the writ, marked ' C,' for the value of the property attached as aforesaid at the time it was taken."

The assignment of Hunt, Farnum & Co. to the plaintiffs, Hunt & Williams, and annexed, by copy, to the statement, marked " A," was dated June 30th, 1860, and was in the ordinary form in Rhode Island, of an assignment by an insolvent debtor for the benefit of his creditors, applying the property of the assignors, *first*, to the expenses of the assignment, and the compensation of the assignees ; next preferring certain specified debts ; next those who, within a certain time, release ; and distributing what should remain of the assigned property, after the satisfaction of these preferences, in equal proportion to their claims amongst all the other creditors of the assignors.

The writ upon which the defendant first seized and took the property, and annexed to the statement, marked " B," was a writ in common form, dated 13th July, 1860, issued out of the Superior Court for the county of Bristol, and returnable on the 2d Monday of September, then next, in which writ Frederick Bates, of Pawtucket, in the county of Bristol, Massachusetts, was plaintiff, and David Hunt and John Farnum, described as of Providence in the State of Rhode Island, copartners in business, under the name and firm of Hunt, Farnum & Co., were defendants ; and a form of return was written thereon, dated the same day with the writ, setting forth that certain property was attached, naming that which forms the subject of this suit, but the return was not signed by any one.

The writ upon which the goods were secondly attached, and afterwards, upon an order of the court, in part sold, as perishable, was a similar writ in all respects to the first, dated July 14th, 1860,

and on the same day served by attachment of the same property as the first, wherein Francis Pratt, of said Pawtucket, Massachusetts, was plaintiff, and said Hunt, Farnum & Co., were defendants. From the copies of the answer of the defendants therein, after the action was entered in the court to which it was returnable, it seemed that they appeared to said action merely to object to the service of the writ, on the ground, that they had no property in the goods attached, at the time of the attachment.

The written notice of the mortgage upon the attached property, annexed to the statement, marked "D," according to its date and a certificate upon it of C. W. Thrasher, Esq., of counsel for the plaintiffs, was delivered to the defendant on the 17th day of July, A. D. 1860, and claimed that there was then due on the mortgage, marked "E," the sum of $1333, with interest thereon from the 27th day of April, A. D. 1860.

*C. W. Thrasher, with whom was James Tillinghast, for the plaintiffs :—*

I. However this case might be decided in Massachusetts, under the controlling influence of their insolvent law, no weight ought to be given to that law here. The very reason which leads that court to disregard the usual comity and refuse to give effect to a foreign conveyance of personal property which infringes upon their insolvent system, viz., the protection of their home creditors to the exclusion of foreign creditors, though valid where made, is the very reason why this court should uphold this assignment without regard to the foreign law ; otherwise, they are setting aside the assignment to the prejudice of home creditors in favor of a foreign creditor, and that, too, out of mere deference to the statute of another state, in its whole scope and tenor at war with our own settled law and practice. The insolvent law of Massachusetts can have no extra territorial force. It is a merely remedial statute. The *lex fori*, particularly, as that is also in this case the *lex loci*, must govern here. Apart from the peculiar insolvent system of Massachusetts, the case is entirely free from doubt. It is well settled, that the law of the domicil of assignors determines the validity of the assignment, and passes all personal property, wherever located.

II. But whether or not the attachment disclosed by the state-

ment of facts in this case would be sustained, is, even in Massachusetts, an unsettled question. No parallel case ever seems to have come before the Supreme Court of that state. The actual possession of the property by these plaintiffs, before and at the time of the attachment, we submit, would be sufficient, even in Massachusetts, to avoid the attachment. Their possession was rightful, under a conveyance which, in Massachusetts, passed the title absolutely, even without possession, as against the assignors, Hunt & Farnum, — a conveyance valid by the law of the place where made, and by the common law. Having possession, the plaintiffs were bound to account for the property to the creditors under the assignment, and liable to be called and held to account by this court under our statute. This liability to account has, in a late case, been held in Massachusetts to constitute a sufficient consideration to support a promise by the assignee to pay the debt of his assignor. *Boyd v. Frieze,* 5 Gray, 553, (556.) And besides, too, in the case at bar, one of the assignees is a creditor; so that they stand here as *bona fide* purchasers or mortgagees for value. At least, for that debt, they are entitled to hold; and the remedy, if any, if they have surplus property, is by an attachment in trustee process. The creditor has no right to take the property itself out of their hands by direct attachment. *Hastings v. Baldwin,* 17 Mass. 552; *Andrews v. Ludlow,* 5 Pick. 28; *Lupton v. Cutter,* 8 Pick. 298; *Beach v. Viles,* 2 Peters, 675; *Wheeler v. Sumner,* 4 Mason, 183. The plaintiffs, standing thus as trust mortgagees for this plaintiff creditor, Williams, are entitled to recover the whole value, though that exceeds the debt. *Lyle v. Barker,* 5 Binney, 457.

III. But there is another feature of this case which places the plaintiffs' rights beyond all question. The first attachment was entirely invalid; *Richardson v. Forepaugh,* 7 Gray, 546; and the defendant's taking under it, therefore, tortious. *Badlam v. Tucker,* 1 Pick. 397; *Hunt v. Halton,* 13 Pick. 216; *Woodbury v. Long,* 8 Pick. 543; *Blanchard v. Cooledge,* 22 Pick. 151; *Gilman v. Hill,* 36 N. Hamp. 311. The plaintiffs' right of action and to judgment was, therefore, fixed before the second attachment; and the defendant cannot protect himself under that.

There was no notice that the first attachment was abandoned, nor any surrender of goods to the plaintiffs before the second attachment; and the first was therefore made a means to the second; and even if the second were not, consequently, entirely void, clearly the defendant cannot shield himself under it from the consequences and liability, already fixed, of his prior illegal and tortious act. *Ilsley* v. *Nichols*, 12 Pick. 269.

IV. At all events, the plaintiffs are entitled to judgment for that part of the property, viz., the white cotton, carried by the plaintiffs from Rhode Island. Their title to that certainly prevailed over the attachment; and also for damages for detention up to the time of the second attachment. Compare *Langworthy* v. *Little*, 12 Cush. 109; *Kanaza* v. *Taylor*, 7 Ohio, (Critchfield,) 134.

*W. W. Blodgett, with whom was William H. Potter, for the defendant :—*

I. The assignment under which the plaintiffs claim the property is repugnant to the laws of Massachusetts, and void as against attaching creditors who are citizens of that state. *Wyles* v. *Beals*, 1 Gray, 233; *Edwards* v. *Mitchell*, 1 Gray, 239; *Ingraham* v. *Geyer*, 13 Mass. 146; *Bowles* v. *Graves*, 4 Gray, 117.

II. The assignment, though valid in this State, being in direct conflict with the policy of the laws of Massachusetts, and injurious to the rights and interests of her citizens, cannot give to the assignees any title to the property situate in that state at the time of the assignment, nor any right to the possession thereof against an attaching creditor who is a citizen of that state. *Ingraham* v. *Geyer*, 13 Mass. 146; *Zipcey* v. *Thompson*, 1 Gray, 243; *Boyd* v. *Rockport Steam Cotton Mills*, 7 Gray, 406; *May* v. *Breed*, 7 Cush. 15, Shaw, C. J. 42; 2 Kent's Com. 495.

III. The title of the plaintiffs to the white cotton rests upon grounds entirely distinct from that of their title to the rest of the attached property. It was situate, at the time of the assignment, in this State, where, under the assignment, they doubtless had a right to the possession of it, and did take possession of it. But suppose their title to so much of the property to have been complete; we say, that at the time of the attachment, it was inter-

mingled with the other property; the officer had no notice from the plaintiffs of any claim to it in distinction from the other property, and it was his duty to attach it with the rest. The attaching it was no conversion. No special demand was made for it. They allow him to keep it nine months, and sell it, without any notice of their claim. This action cannot be maintained against him for that property. *Bond* v. *Ward,* 7 Mass. 123; *Shumway* v. *Rutter,* 8 Pick. 443; *Sawyer* v. *Merrill,* 6 Pick. 478.

IV. Even if the first attachment afterwards became void by reason of the non-return of the writ, the second and third attachments under which the officer held the goods, at the time of the plaintiffs' demand, were rightly held by the Superior Court to be good and lawful seizures of the property, so as to give that court jurisdiction of the persons of the defendants in these cases. *Gile* v. *Devens,* 11 Cush. 57. The judgment of the Superior Court in these cases, being a court of competent jurisdiction, and being made by the defendants in these cases the tribunal of final jurisdiction of the question raised in the answers in abatement, is conclusive, *and a complete justification of the officer everywhere.*

V. The first attachment at the time of the plaintiffs' demand, and when this action was commenced, so far as the officer's right and duty to hold the goods were concerned, was lawful; the writ in his hands, in due form, issuing from a court of competent jurisdiction, was his sufficient authority and justification in making the attachment and holding the goods. The rule that an officer cannot justify under returnable process which is not returned, does not apply until *after the return day of the process.* At the date of this writ, the officer had three weeks within which to complete his return. *Portland Bank* v. *Stubbs,* 6 Mass. 422.

AMES, C. J. It is certainly unfortunate that between civilized nations, and especially the states united under one federal government, there should not exist such a community of interest and feeling, and such a confidence in each that justice will be everywhere equally administered to the citizens and subjects of all, as to allow full sway to that principle of general law, that the transmission and conveyance of personal property shall follow the law of the domicil of him who conveys it, or from whom it is transmitted, no matter where the property may be locally situa-

ted. The grand policy of this rule, so favorable to commerce and to kindly relations of all sorts, and its inherent justice, in allowing the owner to apply his property to the purposes, and in the mode, to which he is accustomed as lawful, commend it to universal prevalence ; and far outweigh the petty advantages which are occasionally obtained by setting at naught the rule, under some notion of local policy and separate interests. The case before us does not, however, call for our decision upon the main question discussed, whether we should apply to it the general rule, as one which *we*, at least, were entitled to administer, but, upon the facts stated, falls within a much narrower rule of decision. The personal property of the plaintiffs, in Massachusetts, and of which they had taken possession under an assignment for the benefit of creditors, made to them by citizens of Rhode Island in accordance with the laws of Rhode Island, was, on the 13th day of July, 1860, seized and taken by the defendant, upon a writ of attachment sued out by a citizen of Massachusetts, to enforce a note originally given by the assignors to a citizen of Rhode Island, and his property at the time of the assignment ; the note, when overdue, having been transferred to the plaintiffs in the writ of attachment, unquestionably, for the purpose of so far defeating the assignment. There is, and can be, no rule of policy favorable to the citizens of Massachusetts, and supported by its courts, in derogation of the general law, and of this assignment well executed under it, applicable to this state of facts. The note was subjected, at the time of the assignment, to the law of distribution of the effects of the debtor imposed by the assignment ; and to allow any other rule to prevail, would be, in effect, to allow a citizen of Rhode Island to evade and defraud the law of his own State by appealing to the mere power of another. The courts of Massachusetts do not, any more than our own, sanction such an evasion ; and an attachment of goods there, under such circumstances, is, by their own decisions, void as against the title of the foreign assignee. *Whipple* v. *Thayer*, 16 Pick. 25 ; *Daniels* v. *Willard*, Ib. 36 ; *Richardson* v. *Forepaugh*, 7 Gray, 546. As between the plaintiffs and the first attaching creditor, or the defendant who acted for him in making the attachment, the title to the property attached was in the plaintiffs.

It is not a question, at this day, that the attachment by a sheriff of the goods of one man upon a writ against another, if perfected by taking the goods into his possession and excluding the owner, is, of itself, a conversion sufficient to support an action of trover for the value of the goods converted. The writ gives him no authority to take the goods of any one but the defendant named in it; and if he does, he is as much without the protection of his official character and process, as if he had never been an officer, or had any process. It is no hardship that he should be treated as a trespasser, if he should take the goods of one whose property he is not authorized to touch; since, if he does not *know* that the goods are the property of the defendant in the writ, to avoid mistake and consequent loss, he may always, before serving the writ, require indemnity. All this is as well settled by the law of Massachusetts as by the law of Rhode Island. *Woodbury* v. *Long*, 8 Pick. 543; *Blanchard* v. *Coolidge*, 22 Pick. 151, 156. In this case, it seems, that the defendant was apprised of the title of the plaintiffs at the time of making the attachment, and, on the day of the attachment excluded the plaintiffs from even examining the attached property.

The conversion being thus complete under an attachment, not only void against the plaintiffs, but subsequently abandoned, it is of no consequence to their right of action or damages what the defendant afterwards did with the property;—whether as an officer charged with subsequent writs of attachment, he applied it to the payment of the assignors' debts, or as an unofficial person, selling the property, he appropriated the proceeds to his own use, so that he did not return the property to the plaintiffs, out of whose possession he had tortiously taken it.

For these reasons, without passing upon the other questions made in the cause, judgment must be entered for the plaintiffs for the value of their property at the time of its conversion by the defendant, with interest thereon, by way of damages, since,— deducting therefrom the amount of the mortgage upon the property, which, to its amount, lessened the value of the property to the plaintiffs, and which it seems was paid by the subsequent attaching creditors.