**UNITED STATES of America,
Appellee,**

v.

**Paul DADURIAN, Defendant, Appellant.**

**No. 71–1191.**

United States Court of Appeals,
First Circuit.

Oct. 26, 1971.

Edward John Mulligan, Pawtucket, R. I., with whom Carl Capozza, Providence, R. I., was on brief, for appellant.

Lincoln C. Almond, U. S. Atty., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a Dyer Act conviction, 18 U.S.C. § 2313. Defendant was found guilty of receiving and concealing a stolen motor vehicle which was moving in interstate commerce, knowing the same to be stolen.

On May 8, 1969, a 1967 Cadillac El Dorado, vehicle identification number (hereinafter VIN) H7148500, was stolen from the Dreystadt Cadillac agency in Brockton, Massachusetts. On September 30 of the same year defendant registered it in Rhode Island under a different VIN. On June 5, 1970, the car was seized pursuant to a writ of attachment. The keeper, a constable of the town of North Providence, noted a discrepancy between the VIN on the registration certificate found in the glove compartment and the one on the plate inside the left hand door. In the glove compartment he also found a purported bill of sale from Tasca Ford to the defendant. When the keeper called Tasca Ford to

verify this document, Tasca denied ever selling a vehicle to the defendant. The keeper subsequently called Agent Fowkes of the FBI, who, without obtaining a warrant, inspected the car and to whom the keeper gave the registration and the bill of sale. Inspection of the hidden VIN established that the attached vehicle was the one that had been stolen from the Dreystadt agency. Defendant sought an interview with Agent Fowkes shortly after the latter had inspected the vehicle. After being advised of his rights and waiving them, he made a statement. This statement was used at trial without objection.

■■ Defendant's primary contention is that the Tasca bill of sale and the registration certificate were fruits of an illegal search and seizure and therefore improperly admitted into evidence. Assuming *arguendo* that a constable is a police officer, his inspection and seizure of the challenged documents did not violate defendant's fourth amendment rights. It has long been settled that a sheriff or constable acting in good faith pursuant to a civil writ of attachment, regular on its face, is under a duty to seize the property described therein. Holland v. Anthony, 19 R.I. 216, 36 A. 2 (1895) (*per curiam*). While he is protected when he acts under valid process, Curry v. Johnson, 13 R.I. 121 (1880), he is potentially liable to any third party whose property is wrongfully seized. Hunt v. Lathrop, 7 R.I. 58, 68 (1861). *Accord* Matthews v. Densmore, 109 U.S.

216, 3 S.Ct. 126, 27 L.Ed. 912 (1883); Erskine v. Hohnbach, 81 U.S. (14 Wall.) 613, 20 L.Ed. 745 (1871); Buck v. Colbath, 70 U.S. (3 Wall.) 334, 18 L.Ed. 257 (1865).

■■ Defendant alleges that the attachment was invalid. Assuming this was so,[1] the constable would, nevertheless, have been under a duty to execute the writ, and the defendant's remedy would lie in civil litigation against the party who caused the writ to be issued.

■ The taking of property pursuant to a writ of attachment, regular on its face, is not a seizure within the prohibition of the fourth amendment. The vehicle and the documents were in the keeper's possession pursuant to civil process, and he was under a duty to inspect both. In Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965), a police officer, after arresting the occupants of an automobile for intoxication, returned to remove their car from the scene of the accident. In the process he discovered a handbag on the back seat containing bundles of United States currency. In that case we said "[h]aving the money properly in possession we see no reason why the police could not scrutinize it." *Id.* at 676. *See also* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). In the instant case where the constable inadvertently discovered evidence while acting in his capacity as an officer of the court in a civil action, he cannot be said to have conducted an illegal search and seizure.[2]

---

1. Read in their most favorable light, defendant's contentions are: (1) that a hearing is required before an automobile can be attached; (2) that the attachment was issued against the wrong party; and (3) that the constable had knowledge that the car might be stolen property when he attached it. None of these contentions rises to the level of an assertion that the writ was either irregular or invalid on its face, or that the constable acted in bad faith.

2. In United States v. Powers, 439 F.2d 373 (4th Cir. 1971), the court examined at length the issues and precedents involved in the warrantless inspection of

the hidden VIN. It concluded that an officer may do so when he "has a legitimate ground for checking the identification number." *Id.* at 376. *See also* United States v. Holgerson, 424 F.2d 1130 (10th Cir. 1970); Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915 (1968); Cotton v. United States, 371 F.2d 385 (9th Cir. 1967). Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), are inapposite here because they involve warrantless searches of automobiles carried out pursuant to crim-

As for the FBI agent, the only additional evidence contributed by him was the hidden VIN and the obliteration of the inspection sticker on the windshield. The discrepancy between the VIN on the door plate and the one on the registration certificate created a reasonable ground to conduct a limited inspection to verify the same. *Cf.* United States v. Powers, *supra* note 2.

■ Defendant made various other motions, objections, and requests based on three contentions: (1) that the government must prove both receipt and concealment of the stolen vehicle, (2) that there was insufficient evidence from which the jury could infer that the defendant knew the car was stolen, and (3) that the government failed to establish that the vehicle was moving in interstate commerce when received by the defendant. The first contention is manifestly frivolous. The statute and the indictment should be read in the disjunctive. United States v. Powell, 420 F.2d 949 (6th Cir. 1970); Weaver v. United States, 374 F.2d 878 (5th Cir. 1967). Receipt being admitted, the requirement of the statute and indictment

were fully met. Moreover, the altered VIN and obliterated inspection sticker were sufficient to support a finding of concealment.

■ Likewise the second contention is without merit since the jury could infer guilty knowledge both from the suspicious circumstances of the purchase described in defendant's statement to Agent Fowkes and from his own testimony at trial.[3] The jury was fully instructed on drawing inferences and was specifically told that they must find that the defendant knew the car was stolen when he received it. On appeal defendant objects that the court failed to instruct the jury that guilty knowledge could be inferred from the possession of recently stolen property, but the passage of time between the theft and the receipt of the property would weaken such an inference. This objection, not having been raised below, has been waived. Nor is it plain error. Moreover, such a charge might well have hurt the defendant since there was evidence from which the jury could have concluded that he was in possession of the vehicle shortly after it was stolen.[4] *See* United States

---

inal investigations where the only conceivable purpose of such investigations was the discovery of evidence. Nor are United States v. Nikrasch, 367 F.2d 740 (7th Cir. 1966) or Simpson v. United States, 346 F.2d 291 (10th Cir. 1965) in point since they resemble and rely on *Preston*.

3. Defendant told Agent Fowkes that while he was operating his taxi business he was approached by two men whom he had never seen before and whom he could not describe in detail. These two men represented themselves as Tasca Ford salesmen and offered to sell him the car. Defendant stated that he paid $3,995 in cash on the spot. This occurred at about the time his business went into receivership.

He repeated essentially the same story at trial with some minor variations, *viz.*, that the two men appeared one day and asked him if he was interested in the car and that they returned two days later and delivered it, at which time he paid the purchase price with receipts from his business.

4. Agent Fowkes testified:

"He [the defendant] then said that he had the car approximately three or four months before the Whitehall Cab Company went out of business. I then asked him what date the Whitehall Cab Company went out of business and he said that he'd have to call his accountant and determine that so in my presence he did call the accountant and later related to me that the company went out of business on September 27th of 1969. * * * I then showed him a photostatic copy of a car order form from Tasca Ford Sales dated September 12, 1969, for a 1967 Cadillac El Dorado. He stated that was a true photostatic copy of a bill of sale which the two salesmen had given him.

\*　　\*　　\*　　\*　　\*

I then pointed out to Mr. Dadurian that the bill of sale was dated September 12 of 1969 and that the delivery date was indicated as being September 14 of 1969, two days later. He said then he may have been mistaken on

v. Wolfenbarger, 426 F.2d 992, 995 (6th Cir. 1970).

■ With respect to whether the car was moving in interstate commerce, the only evidence is that it was stolen on May 8, 1969, from Massachusetts and that it was registered in Rhode Island on September 30. Defendant stated to Agent Fowkes that he bought it three or four months before September 1969. He subsequently changed this to the date indicated on the bill of sale.[5] At trial, the defendant maintained that he bought the car in September. However, there was evidence tending to rebut this testimony. In these circumstances the question of whether the vehicle had ceased to move in interstate commerce was for the jury. *See* Powell v. United States, 410 F.2d 710, 714 (5th Cir. 1969); United States v. Johnson, 409 F.2d 861 (7th Cir. 1969); Babb v. United States, 351 F.2d 863 (8th Cir. 1965); United States v. Cioffi, 253 F.2d 494 (2d Cir. 1958); Schwachter v. United States, 237 F.2d 640 (6th Cir. 1956).

■ Finally, the defendant argues that it was error to release the jury for the night once it had begun to deliberate. The record shows that the defendant agreed that the jury could be released and that despite numerous opportunities to object, his only comment was, "I think your instructions [those directing the jury not to discuss the case with anyone at home] were very adequate and encompassing, Your Honor." Not until after the jury left did defendant raise his objection. He may not assert that objection now. Nor do we see that defendant was prejudiced by the release.

Affirmed.

the date that he actually received the car, that is, it may have not been three or four months before the time that the cab company went out of business and that he hadn't noticed that the

date on the bill of sale and that the delivery date were different." [punctuation sic]

5. *See* note 4 *supra*.