**UNITED STATES of America,**
Appellee,

v.

**Clifford J. BROWN, Defendant,**
Appellant.

**UNITED STATES of America,**
Appellee,

v.

**Juan Guzman LOPEZ, Defendant,**
Appellant.

Nos. 71-1373, 71-1374.

United States Court of Appeals,
First Circuit.

Argued Feb. 24, 1972.

Decided March 31, 1972.

Charlotte Anne Perretta, Boston, Mass., with whom Joseph S. Oteri, Crane, Inker & Oteri, and Edward J.

Kelley, Boston, Mass., were on the brief, for appellants.

Henry H. Hammond, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on the brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendants Brown and Lopez were convicted of conspiring to receive, conceal, sell, and dispose of motor vehicles moving in interstate commerce, knowing them to be stolen and of receiving, concealing, selling, and disposing of twelve stolen motor vehicles.[1] They appeal contending that the district court should have suppressed certain physical evidence and statements made by Lopez. Brown's appeal is totally dependent on the favorable resolution of the issues raised by Lopez. Since we resolve these issues adversely to Lopez, we address ourselves only to the facts underlying his conviction.

On the morning of September 24, 1969, the police in Norton, Massachusetts were informed that a late model automobile with no registration plates had been seen in the middle of the woods in the southeast section of Norton. They investigated, found the vehicle in question, and discovered two other late model vehicles nearby. Upon learning that two of the three vehicles had been stolen in New York, they requested assistance from the Massachusetts State Police. About 1:30 that afternoon State Police Sergeant O'Neil and Trooper Anderson arrived in Norton, and together with Officers Brugliera and Clark of the Norton Police proceeded to the place where the three cars were located. There they ascertained that the third vehicle was also stolen. These cars were within three hundred yards of each other and each was adjacent to a cart path

---

1. Violations of 18 U.S.C. §§ 2313 and 371 (1970). Defendants Brown and Lopez, together with one Joe Guzman, were charged with conspiracy in Count I. Guzman's trial was severed. Brown was charged with receipt of three vehicles, Counts II, III, and IV. Lopez was charged with receipt of ten vehicles, Counts III, V, VI, VII, VIII, IX, X, XI, XII, and XIII.

through the woods. The only access to this path was across property occupied by Lopez which was situated approximately a quarter of a mile to the north.

About 3:30 that afternoon the four officers drove onto Lopez's property where he and another man were working on an automobile. Lopez approached the officers, who identified themselves and told him about the three cars in the woods. The four officers and Lopez then walked down the path to view the vehicles and returned to the yard. During this walk Lopez admitted that he controlled access to the path and stated that he had placed two piles of brush across it to prevent its unauthorized use. He denied, however, knowing anything about the cars in the woods. On returning to the yard, the officers, observing that the defendant had become increasingly nervous, told him that he was under suspicion and informed him of his rights. Lopez then requested and was granted permission to make some telephone calls. After several unsuccessful attempts to reach his attorney, and after a private conversation with his wife, he told Officer Brugliera that he knew about the cars and wanted to talk to Sergeant O'Neil. He told O'Neil that he had bought the cars from a man in a bar for $100 each and that he still owed this individual $100 for the third vehicle. He professed to be unable to tell the police either the man's name or where he could be reached. Lopez was then placed under arrest and taken to the Norton Police Station. Later that evening he was questioned in the presence of his attorney and repeated essentially the same story in more detail.

Sometime after Lopez's arrest, a tow truck summoned by the police arrived at his house to remove the three vehicles from the woods. In the process of removing brush that was blocking the cart path, Trooper Anderson observed a partially stripped Ford behind a shed on the Lopez property. When he approached it, he saw automobile parts strewn about the area behind the shed, a homemade rig for removing automobile engines and the chassis of another stripped vehicle. This occurred at about 8 p. m. There were also New York license plates lying on the ground and evidence that an attempt had been made to destroy the identity of the stripped vehicles by removing and burning vehicle identification number (VIN) plates and other components. The police searched the piles of rubble and the nearby ash can and discovered VIN plates which formed the basis of several of the substantive counts.

■■ Lopez contends that the automobiles, license plates and VIN plates discovered by the officers after his arrest were the fruits of an illegal search. Initially, he argues that since the officers had no more evidence when they arrested him than they had when they first went on his property, if the arrest was proper then they must have had probable cause for their initial entry and should have obtained a warrant. This argument is without merit because, if the officers had probable cause for an arrest they needed no warrant to peaceably enter the property to effect an arrest. Moreover, even in the absence of probable cause the police were entitled to pursue their investigation and to go upon the land to question him. *See* Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476 (1953). The above argument is also unsupported by the record since it was not until Lopez admitted that he controlled the cart path, appeared nervous, and made contradictory statements regarding the vehicles in the woods that the officers had probable cause to arrest him.

■■ Lopez further argues that the partially stripped Ford discovered by Trooper Anderson in the process of clearing the path was not in plain view. However, the testimony establishes that the vehicle was clearly visible once the brush had been removed, so the only question here is whether the officer was properly in a position to view it. Cool-

idge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We hold that he was. The police had a duty to remove and secure the three stolen vehicles found in the woods, and to accomplish this they had a license to enter upon the property and, if necessary, move the piles of brush hindering the removal operation. They were not required to go about this task with their eyes closed. *See* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965). That Lopez had already been arrested for receiving these vehicles is not significant. Moreover, since Trooper Anderson had reasonable grounds to suspect that the partially stripped Ford might be a stolen vehicle, he did not violate Lopez's fourth amendment rights in approaching the vehicle for the limited purpose of ascertaining its identity. *See* United States v. Dadurian, 450 F.2d 22 (1st Cir. 1971).

■ The validity of the subsequent search of the vicinity of the shed and of the stripped cars as a result of which various VIN plates and New York license plates were discovered rests on a different rationale. The testimony renders untenable any assertion that all the items were in plain view, and we assume without deciding that they were not abandoned.[2] However, the exigent circumstances of this particular case justify the police in proceeding without a search warrant. The discovery of the two partially stripped vehicles, the rig for removing automobile engines, the various vehicle components strewn about and the obvious attempt to render the vehicles impossible to identify, cast new light on the situation. This evidence gives rise to the likelihood that the police were dealing with more than a single receiver of stolen automobiles. Since it was already evening and since only Lopez was in custody, there was substantial danger that evidence pertaining to other vehicles might be removed or destroyed during the night. Under these circumstances the police were justified in extending the search.

■ Lopez also contends that statements made by him subsequent to being told that he was under suspicion and prior to the arrival of his attorney at the police station should have been suppressed. He was informed of his constitutional rights on several occasions: (1) when he was told he was under suspicion; (2) when he was placed under arrest; and (3) when he was taken to the Norton Police Station. He expressed no unwillingness to answer questions, and in fact, after a private conversation with his wife, volunteered to make his original statement about purchasing the stolen vehicles. This statement was not the result of police interrogation, nor was he in custody at the time it was made. Therefore, we cannot accept Lopez's assertion that his unsuccessful attempt to reach his attorney indicated a desire to remain silent, nor do we believe that the police should have construed it as such. *Cf.* United States v. Priest, 409 F.2d 491 (5th Cir. 1969); United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968). The record indicates that the government has sustained its burden of showing that Lopez's statements were voluntarily made. *See* Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

---

2. The record is obscure concerning which items were found in the rubbish piles and ash barrel and which were found elsewhere. We are, therefore, reluctant to address ourselves to the difficult issues of whether this evidence had been abandoned or whether it was within the "curtilage" protected by the fourth amendment. *See* Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966), and *compare* Work v. United States, 100 U.S.App.D.C. 237, 243 F.2d 660 (1957); People v. Edwards, 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713 (1969); *with* United States v. Minker, 191 F.Supp. 683 (E.D.Pa.1961), aff'd, 312 F.2d 632 (3d Cir. 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963); *See also* Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

In view of the above and since Brown's only contention is that evidence improperly admitted against Lopez was also improperly admitted against him, the judgment of the district court is affirmed.