# United States Court of Appeals
## For the First Circuit

No. 11-1479

UNITED STATES OF AMERICA,

Appellee,

v.

MATTHEW CLARK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Selya, Circuit Judges.

James H. Budreau for appellant.
Margaret D. McGaughey, Assistant United States Attorney
(Appellate Chief), with whom Thomas E. Delahanty II, United States
Attorney, was on brief, for appellee.

July 16, 2012

**SELYA, Circuit Judge.** Defendant-appellant Matthew Clark was convicted on two counts of possessing child pornography. He now challenges the propriety of the search that uncovered his pornography collection and ultimately led to his conviction. He also challenges the 210-month sentence imposed by the court below. Concluding, as we do, that the defendant's arguments are without merit, we affirm.

## I. BACKGROUND

The facts relevant to this appeal are essentially undisputed. On January 19, 2008, officers from Maine's Animal Welfare Program (AWP) and the local sheriff's department executed a search of a home in Somerville, Maine, inhabited by Fern Clark and her adult son, Matthew. The officers conducted this search pursuant to a warrant issued by a state magistrate the previous day (the first warrant), which authorized a search for evidence of animal cruelty and the unlicensed operation of a breeding kennel.

During their search, the officers entered the defendant's bedroom. Near a computer work station, they saw a handwritten list of web sites with titles suggestive of child pornography together with nude photographs appearing to depict underage males.

The officers immediately halted their search and approached the local magistrate for a supplementary search warrant

(the second warrant).[1]  The second warrant authorized a search of the Clark household for child pornography.  While executing this warrant, officers seized evidence that subsequently formed the basis for a federal indictment against the defendant for two counts of possessing child pornography.[2]  See 18 U.S.C. § 2252A(a)(5)(B).

Prior to trial, the defendant moved to suppress evidence seized during the second search.  Pertinently, he argued that the first warrant was defective (and, therefore, that the original search was illegal) because the affidavit submitted in support of the warrant application did not make out probable cause to believe that evidence of either animal cruelty or an unlicensed kennel operation would be found.  Building on this foundation, he argued that the second search would not have come to pass but for the evidence of child pornography uncovered during the initial (illegal) search.  He concluded, therefore, that the items seized during the second search were the fruit of the poisonous tree, see

---

[1] During this hiatus, some officers remained at the scene to ensure that the premises would not be disturbed.

[2] Fern Clark was not prosecuted federally.  However, relying in part on evidence seized during the first search, local authorities brought charges of animal cruelty against her in a Maine state court.  See Me. Rev. Stat. tit. 17, § 1031(1)(E).  She was convicted of those charges, and her conviction was affirmed on appeal.  See State v. Clark, No. 09-375 (Me. May 18, 2010) (per curiam).

-3-

<u>Wong Sun</u> v. <u>United States</u>, 371 U.S. 471, 484-85 (1963), and should have been excluded when offered by the government at trial.[3]

The district court refused to suppress the evidence. It held that the first warrant was supported by probable cause and, in all events, the searching officers had relied upon it in good faith, <u>see</u> <u>United States</u> v. <u>Leon</u>, 468 U.S. 897, 918-25 (1984). Because the court found no constitutional flaw in the first search, there was no basis for suppressing the items seized during the second search.

After a bench trial, the district court found the defendant guilty on both of the possession counts.[4] At the disposition hearing, the district court, over objection, relied on the defendant's two prior convictions for indecent acts involving children as a basis for an offense-level enhancement related to "a pattern of activity involving the sexual abuse or exploitation of a minor." USSG §2G2.2(b)(5). With this enhancement in place, the court sentenced the defendant to a 210-month incarcerative term (the bottom of the guideline sentencing range). This timely appeal ensued.

---

[3] In the court below, the defendant advanced additional arguments in support of suppression. Without exception, those arguments have been abandoned on appeal.

[4] The defendant has not challenged the splitting of the indictment into two counts, and we do not comment further on that circumstance.

## II.  ANALYSIS

On appeal, the defendant challenges both the denial of his motion to suppress and the application of the "pattern of abuse" enhancement.  We bifurcate our discussion accordingly.

### A.  **The Motion to Suppress.**

When reviewing a denial of a motion to suppress, we assay a district court's legal conclusions, including its conclusion regarding the existence of probable cause, de novo.  United States v. Kearney, 672 F.3d 81, 88 (1st Cir. 2012); United States v. Schaefer, 87 F.3d 562, 565 & n.2 (1st Cir. 1996).  We must, however, credit the district court's findings of fact unless they are clearly erroneous.  United States v. Hughes, 640 F.3d 428, 434 (1st Cir. 2011).  Thus, we will uphold a denial of a suppression motion as long as "any reasonable view of the evidence supports the decision."  United States v. Woodbury, 511 F.3d 93, 96-97 (1st Cir. 2007) (internal quotation marks omitted).

In the case at hand, the defendant's suppression argument hinges entirely on the supposed invalidity of the first warrant (which, in his view, was issued in the absence of probable cause).  Mindful that inquiries into the existence vel non of probable cause are normally factbound, see Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 8 (1st Cir. 2004), we carefully examine the contents of the affidavit that accompanied the application for the first warrant.  The test is whether the sworn allegations are sufficient "to

warrant a man of reasonable caution in the belief that an offense has been or is being committed and that evidence bearing on that offense will be found in the place to be searched." Safford Unified Sch. Dist. No. 1 v. Redding, 129 S. Ct. 2633, 2639 (2009) (citation and internal quotation marks omitted); see U.S. Const. amend. IV (stating that no search "[w]arrants shall issue, but upon probable cause, supported by Oath or affirmation").

Christine Fraser, an AWP veterinarian, swore out the affidavit supporting the application for the first warrant. She explained that on January 16, 2008 (three days before the searches in question took place), police in Salem, New Hampshire, had discovered 22 dogs locked inside a car. The dogs were in poor condition (indeed, three of them were dead) and were covered in fleas and feces. The car's owner, Amy Moolic, told the police that she had rescued the dogs from a "puppy mill" in Somerville, Maine, where the conditions were "filthy." After the Salem police obtained paperwork (not specifically identified) indicating that the dogs had come from the home of Fern Clark, they informed AWP officials about what they had learned.

This was not the first time that Fern Clark had appeared on the AWP's radar screen. Fraser's affidavit noted that animals had been seized from Fern Clark's home kennel in the 1990s (although she was ultimately acquitted of animal cruelty). Between 2005 and 2007, the AWP received three separate complaints about

-6-

sick animals and squalid conditions at the Clark residence. In response to each of these complaints, Fraser sought to inspect the premises; each time, she was turned away. On one of these occasions, the Clarks barred Fraser from entering their home but permitted a relatively inexperienced local animal control officer to inspect the premises. He concluded that the conditions inside the home were "borderline but ok."

By statute, Maine requires that all breeding kennels be licensed. See Me. Rev. Stat. tit. 7, § 3931-A(1). A breeding kennel is defined alternatively as either any location that has at least five adult female animals capable of breeding and where at least some of the offspring are sold or any location where more than 16 dogs or cats raised on the premises are sold in any given calendar year. Id. § 3907(8-A). The Fraser affidavit related that Fern Clark's license to operate a breeding kennel had expired in 2005 and had not been renewed. Nevertheless, Fern Clark had admitted to Fraser that, even after her license for a breeding kennel had expired, she had approximately 50 dogs on her property. Moreover, the AWP had continued to receive complaints from customers who claimed to have purchased puppies and kittens from her.

Based on these averments, we have little difficulty in concluding that probable cause existed to search the Clark home for evidence of animal cruelty and the unlicensed operation of a

-7-

breeding kennel.  Probable cause exists whenever the circumstances alleged in a supporting affidavit, viewed as a whole and from an objective vantage, suggest a "fair probability" that evidence of a crime will be found in the place to be searched.  Illinois v. Gates, 462 U.S. 213, 238 (1983); see United States v. Sanchez, 612 F.3d 1, 5 (1st Cir. 2010).  Probable cause does not require either certainty or an unusually high degree of assurance.  See United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999).  All that is needed is a "reasonable likelihood" that incriminating evidence will turn up during a proposed search.  Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003).  The Fraser affidavit easily satisfies this standard.

The centerpiece of Fraser's affidavit is Moolic's statement that many of the bedraggled dogs found in her car had been rescued from a "puppy mill" in Somerville, Maine, where the conditions were "filthy."  Salem police, following up on Moolic's statement, obtained paperwork that linked these dogs to Fern Clark — a woman who previously had operated a licensed breeding kennel in Somerville, Maine.  In addition, the affiant reported that, even after Fern Clark's license had expired, she harbored a large number of dogs on her premises and continued to be the subject of complaints from putative purchasers.  These facts formed the basis for a reasonable belief that Fern Clark, at or near the time of the

application for the first warrant, was illegally kenneling animals in inhumane conditions.

The fact that Fraser's affidavit relies in part on matters not within her firsthand knowledge does not destroy its force. An affidavit supporting a warrant application may rely upon information provided by a third-party source as long as the affiant gives the issuing magistrate a sufficient basis for crediting that source. See United States v. McFarlane, 491 F.3d 53, 57 (1st Cir. 2007). In evaluating whether a particular affidavit crosses this threshold, we may consider, among other things, whether the affidavit establishes the source's veracity, whether the source's statement derives from firsthand knowledge, and whether all or any portion of the source's statement is corroborated. United States v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir. 2011). We also may consider "whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information." Id. None of these factors is singularly dispositive, and a stronger showing on one may offset a weaker showing on another. United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996).

Here, all of the aforementioned factors militate in favor of a finding that Moolic's statement was worthy of credence. First, the record does not indicate any reason to question Moolic's veracity; for aught that appears, she was a neutral party who had

nothing to gain by pointing the finger at an unnamed kennel in a neighboring state. The fact that the Salem police credited Moolic's statement following a face-to-face encounter with her bolsters her overall credibility. See United States v. Croto, 570 F.3d 11, 14 (1st Cir. 2009) (noting that sources who meet with police are inherently more credible). What is more, lying to the police could have had serious repercussions for her. See N.H. Rev. Stat. Ann. § 641:4 (criminalizing the making of a false statement to law enforcement officials that implicates another in a crime). Second, Moolic — who claimed to have rescued the dogs herself — had firsthand knowledge of the conditions at the "puppy mill." And the Salem police were able to obtain paperwork that tied the dogs to Fern Clark, whose operation was located where Moolic had placed the "puppy mill." Similarly, Moolic's statement jibed both with other complaints that Fraser had heard over the years and with her own concerns. These data points partially corroborated Moolic's statement and, thus, reinforced it. See United States v. Sclamo, 578 F.2d 888, 890 (1st Cir. 1978); see also United States v. One 1986 Ford Pickup, 56 F.3d 1181, 1188 (9th Cir. 1995) (per curiam) (stating that "'[i]nterlocking' information from multiple informants may enhance the credibility of each").

The defendant labors to discount the force of Moolic's allegations on the ground that the Fraser affidavit does not state when Moolic rescued the dogs from Fern Clark's home. The rescue,

he says, could have occurred years earlier, and the poor condition of the dogs could thus have been entirely Moolic's fault. This pettifoggery defies logic. After all, "[s]earch warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided." United States v. Syphers, 426 F.3d 461, 465 (1st Cir. 2005) (internal quotation marks omitted). While Fraser does not mention the exact date when Moolic rescued the dogs, the common sense inference is irresistible that Moolic was discussing recent events when she spoke with the Salem police. See Zayas-Diaz, 95 F.3d at 115-16 (stating that an affiant's failure to provide precise temporal references is not fatal when the relevant time frame can be inferred).

The defendant also argues that the "paperwork" allegedly linking Moolic's dogs to Fern Clark was entitled to no weight because Fraser's affidavit did not specifically identify the components that collectively comprised the "paperwork." We do not agree. In the search-warrant context, it is not necessary for an affiant, in describing supporting evidence, to be precise to the point of pedantry. See Gates, 462 U.S. at 235 (explaining that "elaborate specificity" has no role in the probable cause context). The affidavit makes clear that the Salem police unearthed documentation that they thought reliably indicated Fern Clark's connection to the dogs. The fact that the police saw fit to pass along this documentation to the AWP is itself indicative of their

-11-

belief in its trustworthiness.  Cf. Estrada v. Rhode Island, 594 F.3d 56, 65 (1st Cir. 2010) (explaining that police may draw upon their experience and expertise in evaluating probable cause).  No more was exigible.

Relatedly, the defendant beseeches us to disregard the past complaints against Fern Clark because those complaints were never corroborated.  Indeed, in one instance Fern Clark was acquitted, and in another instance a home inspection (albeit by a relatively inexperienced inspector) found "borderline" compliance.  But this argument goes only to the weight to be given to the past complaints in the calculus of probable cause.  Independent sources that provide the same information are "mutually corroborating." Wood v. Clemons, 89 F.3d 922, 930-31 (1st Cir. 1996).  In this case, several sources over the years identified Fern Clark as an abuser of animals.  These past complaints (even if not especially probative in and of themselves) and Moolic's allegations reinforce each other.

We need not tarry over the defendant's plaint that the Fraser affidavit was tainted because Fraser had an axe to grind over the Clarks' past refusals to allow her to inspect their home. It is settled beyond peradventure that "[a] police officer's subjective motive, even if improper, cannot sour an objectively reasonable search." Spencer v. Roche, 659 F.3d 142, 149 (1st Cir. 2011).  Here, the facts contained in the Fraser affidavit, viewed

in their totality and from a vantage point of objective reasonableness, establish probable cause.

It is a rare case in which every jot and tittle in an affidavit filed in support of an application for a search warrant will argue persuasively for a finding of probable cause. More often, there will be some facts and circumstances that paint the picture not in black and white, but in varying shades of gray. The task of the issuing magistrate is to make certain that she focuses on the forest — not on the individual trees. See United States v. Carson, 582 F.3d 827, 832 (7th Cir. 2009). The ultimate question is not whether there is some doubt but, rather, whether the totality of the facts and circumstances described in the affidavit, viewed objectively, gives rise to a fair probability that a crime has been committed and that the search, if allowed, will reveal evidence of it. See, e.g., United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008); United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002).

Silhouetted against this backdrop, the outcome is clear. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (internal quotation marks omitted). Given the trappings of credibility that surround Moolic's statement and the other facts limned in Fraser's affidavit, we cannot fault the magistrate's decision to issue the first warrant. The Supreme Judicial Court of

Maine, reviewing Fern Clark's conviction in the animal cruelty case brought by state authorities, determined that the Fraser affidavit demonstrated probable cause to believe that a search of the Clark household would turn up incriminating evidence. State v. Clark, No. 09-375 (Me. May 18, 2010) (per curiam). We agree.

That ends this aspect of the matter. Because the first warrant was supported by probable cause and the defendant has made no independent challenge to the issuance of the second warrant, the district court did not err in denying the defendant's motion to suppress.

### B.  **The Sentencing Enhancement.**

The defendant's remaining claim of error relates to the district court's decision to apply a five-level guideline enhancement for "a pattern of activity involving the sexual abuse or exploitation of a minor." USSG §2G2.2(b)(5). In this regard, the court relied on the defendant's two predicate convictions (in 1979 and 1984, respectively) for indecent acts involving minors. The defendant asserts that those predicate convictions were too remote in time to demonstrate a "pattern" of abuse under section 2G2.2(b)(5). This is a challenge to the district court's application of the sentencing guidelines, which engenders de novo review. See United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011).

In this instance, the defendant's challenge is foreclosed by circuit precedent. In <u>United States</u> v. <u>Woodward</u>, we held that "previous sexual assaults, although occurring long ago, could be considered" when applying a section 2G2.2 "pattern of abuse" enhancement.[5]  277 F.3d 87, 90-92 (1st Cir. 2002) (internal quotation marks omitted). We are firmly bound by this prior panel holding. <u>See</u> <u>United States</u> v. <u>Pires</u>, 642 F.3d 1, 9 (1st Cir. 2011) (holding that, with only narrow exceptions, "newly constituted panels in a federal appellate court are bound by prior panel decisions closely on point"); <u>United States</u> v. <u>Wogan</u>, 938 F.2d 1446, 1449 (1st Cir. 1991) (similar). Consequently, we reject the defendant's sentencing challenge.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we uphold the defendant's conviction and sentence.

**Affirmed.**

---

[5] Our holding in <u>Woodward</u> accords with the views of our sister circuits. <u>See</u> <u>United States</u> v. <u>Bacon</u>, 646 F.3d 218, 220-21 (5th Cir. 2011) (per curiam) (collecting cases from several circuits). By the same token, it comports with the views of the Sentencing Commission. <u>See</u> USSG §2G2.2, comment. (n.1) (explaining that "<u>any</u> combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor" constitutes a pattern of abuse (emphasis supplied)).