**UNITED STATES of America,**
**Plaintiff,**

v.

**Peter Toledo RIVERA, Defendant.**

**Criminal No. 16-408-1 (ADC)**

United States District Court,
D. Puerto Rico.

Signed 02/09/2017

Filed 02/10/2017

Daynelle Maria Alvarez-Lora, United States Attorneys Office, San Juan, PR, for Plaintiff.

Eric A. Vos, Jesus A. Hernandez-Garcia, Federal Public Defender's Office, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

AIDA M. DELGADO-COLÓN, Chief United States District Judge

Before the Court is a motion to suppress evidence seized from the home of defendant Peter Toledo Rivera ("defendant") during the execution of a search warrant issued by a judge of the Puerto Rico Court of First Instance. **ECF No. 35.** Defendant contends that the affidavit submitted in support of the warrant fails to establish probable cause and, as a result, the evidence seized must be suppressed. *Id.* In opposition, the United States of America ("government") argues that: (1) probable cause existed to obtain a search warrant for defendant's home; and (2) even if probable cause did not exist, the evidence seized should not be suppressed pursuant to the good-faith doctrine. **ECF No. 51.**

Upon consideration of the parties' submissions, the Court **DENIES** the defendant's motion to suppress.

## I. Introduction/Overview

On June 20, 2016, officers from the Puerto Rico Police Department ("PRPD") conducted a search of defendant's home pursuant to a warrant issued by a judge of the Puerto Rico Court of First Instance. **ECF No. 35** at 1; **51** at 3. During the search, PRPD seized one 9mm caliber Sig Sauer handgun, model P320, twenty-nine rounds of 9mm caliber ammunition, two 9mm Sig Sauer fifteen round capacity magazines, one hundred and eight (108) small bags of marihuana, unpacked marihuana, and one zip-lock bag containing empty paraphernalia bags and labels. **ECF No. 51** at 5. Based on the evidence seized during the search, defendant was subsequently charged with possession of a firearm in furtherance of a drug trafficking crime, possession with intent to distribute marihuana, and being a prohibited person in possession of a firearm. *Id.*

The judge of the Puerto Rico Court of First Instance found probable cause to issue a search warrant based on a supporting affidavit submitted by Agent Romero-Lebrón of the PRPD ("Agent Romero"). **ECF No. 35-2** (certified translation). The following is a summary of the pertinent facts set forth in Agent Romero's affidavit.

On Tuesday, June 14, 2016, at approximately 2:20 a.m., Agent Romero received a robbery complaint. The alleged victims, Roberto Rivera-Montalvo and Karielys Pagán-Pérez, indicated that while they were in the La Pared sector in Luquillo, Puerto Rico, four individuals, all dressed in black and brandishing firearms, had robbed them. The suspects allegedly stole the victim's cellphones, an iPad, and two motor vehicles. As part of his investigation, Agent Romero attempted to track the location of Mr. Rivera-Montalvo's cellphone by using the "Find My iPhone" application ("iPhone app") on his own cellphone. After inputting Mr. Rivera-Montalvo's Apple user e-mail and password into Agent Romero's phone, the following location was obtained: Las 3T Ward, Eva López Sector in Río Grande. Agent Romero then traveled to this location with other agents. While arriving at the "3T Sector" they encountered three vehicles, two of which were the robbed vehicles. At the location, agents recovered the stolen vehicles, but did not find Mr. Rivera-Montalvo's cellphone or iPad. However, later that afternoon, another agent, Gabriel Cruz, informed Agent Romero that he had arrested an individual carrying Mr. Rivera-Montalvo's cellphone at Alturas de Río Grande Urbanization. At that point, Agent Romero directed Agent Cruz to travel to Street 20 Alturas de Río Grande Urbanization because the iPad was still transmitting its GPS location from that location. Upon verifying the location, the GPS of the stolen iPad marked a concrete single-floor residence, painted completely in white with a concrete fence with black-colored grillwork.[1] This was the residence that Agent Romero later specifically described in his sworn affidavit. Based on this information, and his experience as an Agent of the PRPD, Agent Romero concluded in his affidavit that he believed the above described residence was being used for the storage of stolen property. Accordingly, Agent Romero requested that, should the Puerto Rico Court find probable cause, it issue a warrant to search the premises described in his affidavit.

---

1. The description of the residence has been taken from Agent Romero's affidavit. Within the affidavit, additional detailed description of the house was provided. *See* **ECF No. 35-2** at 1.

Defendant now moves to suppress the evidence seized pursuant to the warrant on the ground that Agent Romero's affidavit lacked probable cause to search his home. **ECF No. 35.**

## II. Discussion

### A. Evidentiary Hearing

■ As a preliminary matter, the Court notes that it is adjudicating defendant's motion to suppress without conducting an evidentiary hearing because one is neither required nor helpful. In this case, defendant has not requested a hearing and, based on the parties' submissions, there is no indication that material facts are in dispute. *See United States v. Jimenez*, 419 F.3d 34, 42 (1st Cir. 2005) ("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record."). Here, the parties do not disagree on the facts. Rather, they only dispute whether the facts set forth in Agent Romero's affidavit are sufficient to establish probable cause. This issue can be resolved by reviewing the affidavit on record. *See* **ECF No. 35-2.**

■ In addition, the Court notes that defendant is not entitled to a *Franks* hearing because defendant has not alleged that any information or statement in the affidavit was false or made in reckless disregard of the truth. *See* **ECF No. 35;** *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012) (noting that there is a "presumption of validity with respect to the affidavit supporting the search warrant" and that "to get a *Franks* hearing, a party

must first make two 'substantial preliminary showings': (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2) the falsehood or omission was necessary to the finding of probable cause."). Here, defendant has not attempted to meet his burden under the requisite standard and has not requested a *Franks* hearing. At most, defendant claims that Officer Romero's assertion that the application was able to mark a particular home overstated the iPhone app's capabilities and was inaccurate and misleading to the local court. **ECF No. 35** at 11. Such a claim does not reach the appropriate threshold to hold a *Franks* hearing. *See Rigaud*, 684 F.3d at 173.

### B. Probable Cause

Defendant contends that Agent Romero's affidavit lacked probable cause because it neglected to include any information about the reliability of the iPhone app that was used to identify defendant's home as the location to be searched. **ECF No. 35** at 2. Defendant avers that the location information provided by the iPhone app constitutes an "anonymous tip" that does not contain sufficient indicia of reliability to establish probable cause. *Id.* at 7–8. Defendant supports his claim by making the following arguments: (1) Officer Romero's affidavit did not show that the iPhone app was reliable on the day it was used to identify the location to be searched;[2] (2) the iPhone app only provided an approximate, rather than a precise, location; (3) the PRPD had an obligation to, but did

---

**2.** The Court notes that defendant identifies Tuesday, June 13, 2016, as the date Officer Romero used the iPhone app to obtain the location set forth in the warrant. *See* **ECF No. 25** at 3. However, Officer Romero's affidavit states that he began investigating and using the iPhone app on Tuesday, June 14, 2016.

**ECF No. 35-2.** The Court takes judicial notice that June 14, 2016 is, in fact, a Tuesday. Accordingly, it will use Tuesday, June 14, 2016, as the relevant date for purposes of its analysis and assume that defendant's date is a typographical error.

not, corroborate the iPhone app's anonymous tip; (4) the information provided by the iPhone app was stale by the time a search warrant was obtained; and (5) Officer Romero's affidavit does not give defendant a sufficient opportunity to challenge the government's basis for establishing probable cause. *Id.* at 8–14.

The government responds to these arguments by claiming that: (1) deference should be given to the municipal judge's finding of probable cause; (2) the iPhone app uses GPS technology that is sufficiently reliable; and (3) under the totality of circumstances, Officer Romero's affidavit contained sufficient evidence to corroborate the reliability of the iPhone app and establish probable cause. **ECF No. 51** at 5-11.

■■■ "A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called 'nexus' element." *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015), *cert. denied,* —— U.S. ——, 136 S.Ct. 280, 193 L.Ed.2d 204 (2015) (quoting *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999)). In determining the sufficiency of an affidavit supporting a search warrant, courts consider whether the "totality of the circumstances" stated in the affidavit demonstrates probable cause to search the premises. *United States v. Beckett*, 321 F.3d 26, 31 (1st Cir. 2003) (citing *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997)). Courts examine the affidavit "in a practical, common-sense fashion and accord considerable deference to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts." *Id.* (quoting *United States v. Barnard*, 299 F.3d 90, 93 (1st Cir. 2002)). Ultimately, "[p]robable cause exists whenever the circumstances alleged in a supporting affida-vit, viewed as a whole and from an objective vantage, suggest a 'fair probability' that evidence of a crime will be found in the place to be searched." *United States v. Clark*, 685 F.3d 72, 76 (1st Cir. 2012) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "All that is needed is a 'reasonable likelihood' that incriminating evidence will turn up during a proposed search." *Id.* (citing *Valente v. Wallace*, 332 F.3d 30, 32 (1st Cir. 2003)). The facts presented to the issuing judicial officer "need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." *United States v. Feliz*, 182 F.3d 82 (1st Cir. 1999) (quoting *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). A judicial officer's review of a supporting affidavit should be given great deference and his or her decision to issue a warrant should only be reversed if there is no substantial basis for concluding that probable cause existed. *United States v. Procopio*, 88 F.3d 21, 25 (1st Cir. 1996).

In this case, despite defendant's arguments to the contrary, the Court finds that Agent Romero's supporting affidavit provides a substantial basis for concluding that probable cause existed to search defendant's home. The Court considers and rejects each of defendant's arguments in turn.

■■■ Defendant first contends that Officer Romero's affidavit does not show that the iPhone app was reliable, accurate, or working correctly on the day it was used to identify the location to be searched. **ECF No. 35** at 8. Defendant further asserts that the affidavit does not indicate whether Officer Romero was familiar with the iPhone app and does not provide enough information for a judge to make a credibility or reliability determination about the location information provided by the iPhone app. *Id.* Based on the facts

asserted in Officer Romero's affidavit, the Court finds these arguments unavailing. First, Officer Romero had familiarity with the iPhone app since he was the one who suggested it be used, and used it without technical assistance, to investigate the whereabouts of Mr. Rivera's stolen phone. Second, there are indications that the iPhone app was working, reliable, and accurate since Officer Romero successfully used it earlier that day while able to track down the location of the two stolen cars that were part of the same robbery. Third, the reliability and accuracy of the iPhone app is further enhanced because it is alleged to rely on GPS technology,[3] which provides a narrowly circumscribed location. *See, e.g., In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.,* 849 F.Supp.2d 526, 533 (D. Md. 2011) ("The Global Positioning System or 'GPS' is a space-based radionavigation utility owned and operated by the United States that provides highly-accurate positioning, navigation, and timing services worldwide to any device equipped with a GPS satellite receiver.... Current GPS technology typically achieves spatial resolution within ten meters, or approximately 33 feet."). Taking this information into account, the Court finds the judge had sufficient information to make a credibility and reliability determination concerning the location information being provided by the iPhone app.

Defendant further challenges the reliability of the iPhone app by arguing that it only provides an "approximate location" and, therefore, "could not have pinpointed

an exact location as Officer Romero claims in his Affidavit." *Id.* Although defendant poses a series of hypotheticals in which he questions whether the iPhone app's map and pinpoint locator were sufficiently detailed and precise, the fact remains that Officer Romero explained in his affidavit how the iPhone app was utilized to zero-in on a particular stolen piece of property until a specific and identifiable residence had been pinpointed. Nonetheless, even taking into consideration the fact that the location may have been approximate, the Court does not see how the exclusion of evidence would follow. That is because the relevant standard does not require exact certainty. To the contrary, in order to establish probable cause, all that is required is a "fair probability" or a "reasonable likelihood" that evidence of a crime will be found in the place to be searched. *United States v. Clark,* 685 F.3d 72, 76 (1st Cir. 2012). In this case, Officer Romero alleged that a stolen iPad was transmitting a location from a specific and identifiable residence using GPS technology. Based on these facts, it can be said that there was more than a fair probability or reasonable likelihood that the identified residence in question contained evidence of a crime.

Defendant next argues that the PRPD had an obligation to corroborate the iPhone app's anonymous tip, but neglected to do so. This argument is easily disposed of because, as already discussed, the reliability of the iPhone app was corroborated when Officer Romero successfully used the app to locate other stolen property (name-

---

**3.** Even if the iPhone app does not rely solely on GPS technology, courts have noted that "[d]ue to advances in technology and the proliferation of cellular infrastructure, cell-site location data can place a particular cellular telephone within a range approaching the accuracy of GPS." *See, e.g., In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.,* 849

F.Supp.2d 526, 533 (D. Md. 2011). Nonetheless, irrespective of the exact precision of the iPhone app's location technology, the Court finds that the issuing judge could have found the iPhone app to be reliable and credible based solely on Officer Romero's testimony that the iPhone app effectively worked earlier in the day in order to track down other property stolen in the same robbery.

ly, the vehicles) from the robbery earlier that day. Moreover, as defendant's own motion explains, a high level of corroboration is not required; all that is required is that "the [corroborating] information must be at least marginally useful in establishing that criminal activity is afoot." ECF No. 35 at 11 (quoting *United States v. Ramirez–Rivera*, 800 F.3d 1, 29 (1st Cir. 2015)). In this case, the fact that the iPhone app had already been successfully used to find some of the stolen property being investigated is more than marginally useful in establishing that additional stolen property might be discovered by using the same technology and investigatory method.

▮▮▮ Defendant also claims that the location information provided by the iPhone app was stale by the time a search warrant was obtained. In support of this argument, defendant points out that the warrant was not applied for and executed until roughly a week after Agent Romero had obtained information from the iPhone app pinpointing the defendant's address.[4] ECF No. 35 at 13. However, the number of days that have elapsed between the identification of the place to be searched and the execution of the search warrant is not determinative. Instead, when evaluating a claim that information supporting a search warrant is stale, the court "must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." *United States v. Morales–Aldahondo*, 524 F.3d 115 (1st Cir. 2008).

In this case, the iPhone app, which allegedly uses GPS technology, pinpointed the location of a stolen iPad at defendant's residence. Although an iPad is easily mo-

bile, and may change locations in the future, the Court finds that a six-day window of time is insufficient to make the iPhone app's location information stale. *See United States v. Tiem Trinh*, 665 F.3d 1, 13–14 (1st Cir. 2011) (holding that information contained in an affidavit was not stale where one month had elapsed between the warrant's issuance and the last observed narcotics-related activity). Indeed, a six-day period of time to draft an affidavit, apply for, and obtain a warrant does not seem unreasonable or excessive given the heavy demands and responsibilities placed upon local police and prosecutors. *United States v. Towne*, 705 F.Supp.2d 125, 132 (D. Mass. 2010) (citing *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932)) ("Police are not required to seek a warrant the moment they have information sufficient to establish probable cause....").

Defendant's final argument is that he was not given a sufficient opportunity to challenge the government's basis for establishing probable cause. The Court finds this argument meritless because this is precisely what defendant is doing by means of this current motion. By his motion to suppress, defendant has argued that Officer Romero's affidavit contained insufficient probable cause to issue a warrant with respect to his property. The Court has now fully considered, but rejected, that argument by finding that the issuing court had a substantial basis for concluding that probable cause existed to search defendant's home.

### C. The Good-Faith Exception

▮▮▮ Defendant concludes his motion to suppress by arguing that because Officer Romero's affidavit lacks probable cause,

4. The Court notes that the warrant was actually executed six, not seven, days after Agent Romero identified the specific residence to be searched. This discrepancy exists because, as

pointed out previously, defendant incorrectly listed the date on which Officer Romero began using the iPhone app as June 13, 2016, rather than June 14, 2016. *See supra* note 2.

the evidence should be suppressed. **ECF No. 35** at 15 (citing *United States v. Gifford,* 727 F.3d 92, 98 (1st Cir. 2013)). In response, the government contends that even if the Court were to find that probable cause did not exist, the evidence is still admissible pursuant to the good-faith exception. **ECF No. 51** at 11. Although the Court does not need to decide the issue—because it finds that the issuing court had a substantial basis for finding probable cause—it will do so out of an abundance of caution to show that even if probable cause was lacking, the evidence of the search would still be admitted.

Pursuant to the good-faith exception, the exclusionary rule of evidence does not apply "where an objectively reasonable law enforcement officer relied in good faith on a defective warrant because suppression in that instance would serve no deterrent purpose." *United States v. Brunette,* 256 F.3d 14, 19 (1st Cir. 2001) (citing *United States v. Leon,* 468 U.S. 897, 920–1, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Although the good-faith exception is broad, an officer's reliance on a warrant must be "objectively reasonable." *Leon,* 468 U.S. at 922, 104 S.Ct. 3405. In circumstances where "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," the evidence will be excluded. *Id.* at 922 n. 23, 104 S.Ct. 3405. The Supreme Court has identified four circumstances in which reliance on the police would not be objectively reasonable, thereby indicating a lack of good-faith: (1) the information provided by the officer in the affidavit was known to be false or provided with a reckless disregard for the truth; (2) the issuing judge ceased to play a neutral role; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause that the officer's belief is entirely unreasonable; and (4) the warrant is so defective that the officer who executed it could not presume it was valid. *Id.* at 923, 104 S.Ct. 3405.

The Court does not find any of these circumstances present here. There is no indication that the issuing judge did not play a neutral role or that the warrant was so defective that an officer could not presume it was valid. In addition, the Court has already concluded that the issuing judge had a substantial basis to find probable cause from Officer Romero's affidavit. Lastly, there is no evidence that Officer Romero knew he was submitting false information or providing information with a reckless disregard for the truth. To the contrary, the information Officer Romero provided to the Court outlined the manner and method in which he identified a particular residence to be searched. Based on the supporting affidavit, the Court believes that there was a substantial basis for the issuing judge to conclude that probable cause existed. Accordingly, it will not question the issuing judge's determination to issue a search warrant with respect to defendant's home. *United States v. Procopio,* 88 F.3d 21, 25 (1st Cir. 1996).

### III. Conclusion

For the foregoing reasons, the Court hereby **DENIES** defendant's motion to suppress, **ECF No. 35.**

**SO ORDERED.**