Anthony BOYD, Plaintiff–Appellant,

v.

CITY OF NEW YORK, Daniel McKenna, Det. Shield # 4339, Individually and in His Official Capacity, Kenneth DeStefano, Det. Shield # 2353, Individually and in His Official Capacity, and John Doe # 1–10, the name John Doe Being Fictitious, as the True Names Are Presently Unknown, Individually and in Their Official Capacities, Defendants–Appellees.

Docket No. 02–7574.

United States Court of Appeals, Second Circuit.

Argued: March 4, 2003.

Decided: July 9, 2003.

Amended: July 15, 2003.

***

Sanford F. Young, P.C., appellant counsel to Jon L. Norinsberg, for Plaintiff–Appellant.

Julian L. Kalkstein, Corp. Counsel's Office, City of New York, for Defendant–Appellee.

Before: CALABRESI, SACK, and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

## I.

In the early morning hours of January 4, 1996, New York City Police Detectives Daniel McKenna and Kenneth DeStefano were conducting surveillance of a stolen black Isuzu Amigo, which had been found parked in the area of 95–32 150th Street in Jamaica, Queens County. The Isuzu had been reported stolen about six weeks earlier by its owner, Anthony J. Lee. Apparently, the Isuzu had been taken from Lee's driveway in Nassau County, where it stood with motor running and keys in the ignition. At the time of the surveillance, the Isuzu was still in good condition. The steering column appeared intact, the ignition had not been "wired," the outside locks were not broken and the original license plate and Vehicle Identification Number (VIN) were still intact on the vehicle. In other words, the vehicle did not look "stolen." The detectives intervened when they saw two people get into the Isuzu. Those individuals told the detectives that the Isuzu belonged to "Tony," and showed them where "Tony" lived across the street from the vehicle. Once backup arrived, the detectives and other officers entered the building where "Tony" was believed to live. It was about 4 a.m. The police forcibly entered the building, which was the home of plaintiff Boyd. Upon hearing the commotion of the police's entrance, Boyd came out of his apartment, at the top of the building's stairs. The police asked him if his name was Tony, to which he responded "yes." They then asked him if he owned a black Isuzu, to which he also responded "yes." At this point the police entered Boyd's apartment with him. It appears that some or all of the police had their guns drawn at this time. Boyd produced his paperwork for the car, which consisted of an insurance card bearing the name Anthony Lee.

What happened next lies at the heart of the dispute in the present case. The detectives have testified repeatedly and consistently from the outset that they asked Boyd to put on clothes and come outside with them to point out the vehicle he owned. After voluntarily following them outside, Boyd indicated the stolen Isuzu and was arrested. Boyd, on the other hand, has consistently testified to a different story in which the police arrested and handcuffed him inside the apartment immediately upon the presentation of the insurance card bearing Anthony Lee's name. This *Rashomon*-like split in the narrative is significant because during the walk downstairs and outside, Boyd responded to police questions with his story of how he purchased the Isuzu from an unknown individual at the airport for $75. There is no dispute that Boyd had not been given his *Miranda* warnings at the time this statement was made. Therefore, if Boyd had been arrested by the time of this statement (the custody prong of *Miranda*), the statement would be inadmissible as involuntarily given. If Boyd walked downstairs voluntarily without coercion, then the statement would be admissible as the product of a noncustodial interrogation.

Boyd was charged with criminal possession of stolen property in the fourth degree[1] and unauthorized use of a motor vehicle in the third degree,[2] and subse-

---

1. "A person is guilty of criminal possession of stolen property in the fourth degree when he knowingly possesses stolen property ...." N.Y. Penal Law § 165.45.

2. New York Penal Law § 165.05 provides in relevant part:
 A person is guilty of unauthorized use of a vehicle in the third degree when: 1. Knowing that he does not have the consent of the

quently indicted by a grand jury. Boyd sought the suppression of his statements to the detectives, but his motion was denied.[3] He was convicted and sentenced to a term of 2–4 years in prison. On appeal, the Appellate Division reversed Boyd's convictions and called for a new hearing on Boyd's motion to suppress. At the new *Huntley* hearing, the court granted Boyd's motion, finding that his statements to the police about purchasing the vehicle for $75 and his identification of the Isuzu were made while in custody and prior to receiving *Miranda* warnings. All charges were subsequently dismissed. By this point, Boyd had served more than two years of his prison sentence.

Boyd then filed the present suit pursuant to 42 U.S.C. § 1983 and state law against the City of New York and detectives McKenna and DeStefano, claiming false arrest, malicious prosecution and false imprisonment.[4] The district court found that there was probable cause for Boyd's arrest and subsequent prosecution. Therefore, there could be no federal or state claim for false arrest, malicious prosecution or false imprisonment, and the district court granted the defendants summary judgment.

## II.

A grant of summary judgment is reviewed de novo, with the evidence examined in the light most favorable to the non-

moving party—in the present case, Boyd. *See Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 123 (2d Cir.2002). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996). Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ The elements of false arrest and malicious prosecution under § 1983 are "substantially the same" as the elements under New York law. *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir.1992). Therefore, the analysis of the state and the federal claims is identical. The pivotal issue in the present case is the presence, or absence, of probable cause for both the arrest and subsequent prosecution of Boyd. If there was probable cause for the arrest, then a false arrest claim will fail. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). Similarly, if there was probable cause for the prosecution, then no malicious prosecution claim can stand.[5]

### A. *False Arrest*

■ "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information suffi-

---

owner, he takes, operates, exercises control over, rides in or otherwise uses a vehicle. A person who engages in any such conduct without the consent of the owner is presumed to know that he does not have such consent.

**3.** Such a motion and the accompanying hearing are called a *Huntley* motion and *Huntley* hearing, respectively. *See People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

**4.** Boyd waived various claims in the district court, including his state law false arrest claim. The district court limited its consideration to the § 1983 claims and the state law malicious prosecution and false imprisonment claims.

**5.** Questions of qualified immunity are also answered by this same probable cause analysis. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000).

cient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991). The police had sufficient information to warrant a reasonable belief that Boyd knowingly possessed stolen property. The police had the stolen Isuzu itself; they had a witness who said "Tony" owned the Isuzu and pointed them towards Boyd's residence; they had Boyd's admission that he owned a black Isuzu; and they had Boyd's presentation of the insurance card from the stolen vehicle with Lee's name on it. Probable cause does not require absolute certainty. Moreover, if police officers of reasonable competence could disagree as to whether there was probable cause, there is "arguable" probable cause sufficient to warrant qualified immunity for the defendant officers. *See Martinez,* 202 F.3d at 634 ("[W]e have said that in the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause."). We will not second guess this arrest. Dismissal of this claim on summary judgment was appropriate.[6]

### B. *Malicious prosecution.*

To succeed on a claim for malicious prosecution, the plaintiff must show that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff. *See Martinez v. City of Schenectady,* 97 N.Y.2d 78, 84, 735 N.Y.S.2d 868, 761 N.E.2d 560 (2001); *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997). Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty. *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983).[7] A presumption of probable cause is created, however, by a grand jury's indictment. *Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248. The presumption is rebuttable, and may be overcome by evidence establishing that the police witnesses "have not made a complete and full statement of facts ... that they have misrepresented or falsified evidence ... or otherwise acted in bad faith." *Id.* at 82–83, 468 N.Y.S.2d 453, 455 N.E.2d 1248. "If plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* at 83, 468 N.Y.S.2d 453, 455 N.E.2d 1248.

A prosecution was initiated against Boyd, and it ultimately was terminated in Boyd's favor. Boyd contends that his

---

**6.** As goes false arrest, so goes Boyd's false imprisonment claim. *See Singer,* 63 F.3d at 118.

**7.** There does not appear to be any conflict between formulations of the element of probable cause as sometimes "probability of guilt" and as sometimes "probability of success." New York cases involving malicious prosecution claims cite to the two formulations interchangeably. For example, *Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248, employs the "probability of guilt" formula-

tion, but supports that definition with a citation string that includes *Munoz v. City of New York,* 18 N.Y.2d 6, 9, 271 N.Y.S.2d 645, 218 N.E.2d 527 (1966), which itself quotes *Burt v. Smith,* 181 N.Y. 1, 5, 73 N.E. 495 (1905) as to a definition that a "malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure." For the purposes of the present case, the relevant question is whether there was probable cause to believe the prosecution of Boyd could succeed.

prosecution was initiated by the police without any reasonable possibility of success, and therefore lacked probable cause. To be convicted of knowing possession of stolen property, the prosecution would have to prove that Boyd *knew* that the Isuzu was stolen property. There was some objective evidence showing that Boyd did not know that the Isuzu had been stolen. The car was in good condition. The locks, ignition and VIN showed no signs of tampering. And, perhaps most tellingly, the original license plates were still on the vehicle. Together with Boyd's story relating the details of his conversation with the stranger who sold him the car, a somewhat convincing portrait of an innocent, if naive, purchase emerged. In contrast, the only evidence the police had that could reasonably indicate that Boyd knew the Isuzu was stolen was his statement that he had purchased the vehicle from an unknown person, at the airport, for $75. We could normally end our analysis here by remarking that this statement provides the minimum requisite probable cause to believe that the prosecution could succeed. However, in the present case, if the statement was made after Boyd's arrest, it would clearly not be admissible and then there would be no probable cause to believe the prosecution could succeed. This question of when the statement was made, in relation to the time of arrest, is a genuine issue of material fact that would have to be resolved before the element of probable cause could be established. Summary judgment would, in that case, have been improperly granted.

However, to add yet another twist, Boyd was indicted by a grand jury. Hence, there is a presumption that the prosecution of Boyd was supported by probable cause. *Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248. Boyd can overcome this presumption with evidence that the indictment was secured by fraud, perjury, the suppression of evidence or other bad faith police conduct. *Id* at 83, 468 N.Y.S.2d 453, 455 N.E.2d 1248. Given the procedural posture of the present case, we believe Boyd has satisfied his burden.

With respect to this issue, we take as true for the purposes of summary judgment that Boyd's version of events is true, and that Boyd was arrested in his apartment before uttering the incriminating statement about the $75 purchase. Given this arrest scenario, there is sufficient evidence to support the inference that the indictment was secured by bad faith conduct on the part of the police to defeat summary judgment. Detectives DeStefano and McKenna have testified repeatedly that they did not arrest Boyd until he was outside, and until after he had made the incriminating $75 statement. However, the On–Line Booking System Arrest Worksheet completed by the police indicates that the arrest location was "Inside 95–40 150th St." (Boyd's building). App. at 120. Additionally, Boyd has testified consistently that he was arrested inside his apartment, before giving his incriminating answer.

When we consider the booking sheet and Boyd's testimony in combination with the police testimony, we move beyond a simple conflict of stories or mistaken memories, and into the possibility that the police knew where they arrested Boyd, but lied in order to secure an indictment. At this preliminary stage, construing all inferences in the light most favorable to Boyd, a jury could reasonably find that the indictment was secured through bad faith or perjury, and that there was malicious prosecution of Boyd. Therefore, the issue of probable cause cannot be resolved by summary judgment. This is a conclusion that does not issue easily from these extraordinary facts, but we think there is enough here to put before a jury.

■ Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well. A lack of probable cause generally creates an inference of malice. *Ricciuti*, 124 F.3d at 131. Summary judgment for the defendants cannot be granted on this element either.

### III.

Therefore, we AFFIRM IN PART and REVERSE IN PART the judgment of the district court. The district court's grant of defendants' summary judgment motion is AFFIRMED as to the false arrest claims and REVERSED as to the malicious prosecution claims.