BARRON, Circuit Judge, concurring.
I fully agree with the analysis that the majority sets forth to explain why David Pagán-González ("Pagán") states a viable Fourth Amendment claim with respect to the allegedly unconstitutional, warrantless search for which he seeks damages. I do so notwithstanding the defendants' assertion of qualified immunity.
I also agree with the majority that Pagán has failed to provide us with a basis for overturning the District Court's order dismissing what he styles as his malicious prosecution claim. In that claim, he seeks damages for the pre-trial detention that he endured and that he contends violated the Fourth Amendment's prohibition against unreasonable seizures. I agree with the majority that Pagán fails to show, with respect to this claim, that he has alleged a violation of clearly established law, and thus I agree that this claim must be dismissed because it cannot survive the second step of the qualified immunity inquiry.
The choice to resolve a constitutional tort claim with reference only to the second step of the qualified immunity inquiry *603 -- as we do here with respect to Pagán's claim concerning his detention -- is often a sensible one. There is a risk, however, that such a choice will unduly stunt the development of the law. See Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (explaining that first deciding whether there has been a constitutional violation often "promotes the development of constitutional precedent"). Thus, in what follows, I explain why I am of the view that -- absent qualified immunity's obscuring screen -- Pagán has stated a viable claim for damages under the Fourth Amendment with respect to his pre-trial detention.
I.
Starting on December 12, 2013, Pagán was held in pretrial detention for five days solely based on an arrest warrant that federal law enforcement agents had procured from a federal magistrate judge after they had filed a criminal complaint against Pagán. See Fed. R. Crim. P. 4(a).[16] I focus solely on this period of Pagán's pre-trial detention in assessing his detention-based claim for damages. I do so because Pagán's complaint, fairly read, plausibly alleges the following.
At least one of the defendants deliberately or recklessly made false statements in an affidavit attached to the criminal complaint. Those statements misleadingly suggested to the magistrate judge that law enforcement had used constitutionally legitimate means to acquire the sole evidence that formed the basis for the magistrate judge's finding, in issuing that arrest warrant, of "probable cause to believe that an offense ha[d] been committed and that [Pagán] committed it." Fed. R. Crim. P. 5.1(e). That evidence consisted of a computer of Pagán's that contained child pornography.
Consider in this regard that Pagán alleges in his complaint that one of the agents who participated in his seizure stated in the affidavit that she attached to the application for the criminal complaint that, "on October 23, 2013, Agents obtained consent to examine two computers," including his own. Consider as well that Pagán also alleges in his complaint that this same agent made that conclusory representation concerning the consensual nature of the examination of the computers, even though she "knew Defendants lied to [Pagán] to secure and obtain the evidence referred to in her Affidavit." Consider, finally, that Pagán's complaint notes that this agent stated in the affidavit attached to the criminal complaint that she "personally participated in this investigation leading to the information contained in this affidavit either through personal investigation or through discussions with other law enforcement personnel."
These allegations are plausible, moreover, in light of our holdings regarding the unconstitutional nature of the search that produced the computer. Recall in this regard that we find that "[n]o reasonable law enforcement agent could fail to understand the ... compulsion that is inherent in the lie used in this case" to obtain the evidence -- namely, the computer containing the child pornography -- that formed the basis for the application for the criminal complaint that led to Pagán's detention pre-trial. Panel Op. 601. Recall, too, that we *604 hold that "any reasonable officer would have known that denying Pagán a 'free and unconstrained choice' to forgo the constitutional protection of a warrant was a violation of his Fourth Amendment rights." Panel Op. 601 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ).
In sum, Pagán has clearly alleged that at least one of the agents involved in effecting his detention deliberately or recklessly misled the magistrate judge into thinking that the sole evidence of probable cause -- the computer -- had been acquired through a constitutionally compliant consensual transfer. But, Pagán has plausibly alleged, that agent was in fact aware that this evidence had been acquired through a clearly unconstitutional coercive ruse.
The consequence of these allegations is that Pagán's detention-based claim brings to the fore at the first step of the qualified immunity inquiry an important legal question. We must decide, at this first step, whether these allegations about this agent's trickery in securing the arrest warrant describe a constitutional violation, such that Pagán may recover damages for his pre-trial detention. We must decide whether those allegations state such a violation, moreover, notwithstanding that the magistrate judge relied on real evidence of criminal activity to make the probable cause finding that served as the predicate for the issuance of the arrest warrant that resulted in Pagán's seizure and notwithstanding that this real evidence was in fact strong enough to support that probable cause finding.
In my view, these allegations do suffice to state such a violation. To explain why, though, I need to wend my way through an unfortunately complex doctrinal thicket. Only then can I adequately explain why, on the one hand, Pagán fails to show that he has alleged a violation of clearly established law, but, on the other, little logic supports the precedential obstacles that potentially stand in the way of his doing so.
II.
I begin by winding the clock back more than two decades. That was when the Supreme Court decided Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), which concerned the constitutional tort of malicious prosecution. I then consider the developments that have transpired in the years since Albright that bear on Pagán's case.
A.
Up until Albright, many lower courts had permitted plaintiffs to recover damages in § 1983 or Bivens actions against law enforcement for the deleterious effects of a baseless criminal prosecution. See Torres v. Superintendent of Police of P.R., 893 F.2d 404, 408 (1st Cir. 1990) (collecting cases). Those effects included, but were not limited to, the harm that the plaintiffs had suffered in consequence of their pre-trial detentions. See, e.g., Raysor v. Port Auth. of N.Y. & N.J., 768 F.2d 34, 39 (2d Cir. 1985) (including "loss of time," "physical discomfort or inconvenience," "mental suffering," and "humiliation" as compensable harms in a malicious prosecution claim) (quoting W. Prosser, Handbook of the Law of Torts 43 (4th ed. 1971) ).
Such damages actions were conceived of as ones that sought remedies for violations of an individual's substantive due process rights. See Albright, 510 U.S. at 271, 114 S.Ct. 807. Those actions were not conceived of as ones that sought remedies only for violations of the plaintiffs' Fourth Amendment right to be free from an unreasonable seizure. See id. In fact, the constitutional claims for malicious prosecution *605 that were pursued in these cases were premised on the notion that they could be brought even if the defendants had never been seized at all. See ids="231967" index="234" url="https://cite.case.law/us/510/266/">id. at 295-96, 114 S.Ct. 807 (Stevens, J., dissenting). The seizures were thought to be relevant, in other words, merely to the plaintiffs' showings of the damages that flowed from the constitutional violations that inhered in the baseless prosecutions, much as the reputational harms that could befall plaintiffs from the fact of such baseless prosecutions were thought to be relevant to such showings of damages as well. Id.; see also Raysor, 768 F.2d at 39.
The courts that permitted such suits to go forward often drew the elements for what they referred to as the constitutional tort of malicious prosecution from the common law tort of malicious prosecution. See Albright, 510 U.S. at 296-97, 297 n.10, 114 S.Ct. 807 (Stevens, J., dissenting) (citing W. Keeton, et al., Prosser and Keeton on Law of Torts § 119 (1984) ); see also, e.g., Goodwin v. Metts, 973 F.2d 378, 383 (4th Cir. 1992) ("[M]alicious prosecution in violation of section 1983 is [common law] malicious prosecution resulting in a constitutional deprivation."); Ayala-Martínez v. Anglero, 982 F.2d 26, 27 (1st Cir. 1992) (listing constitutional deprivations for purposes of a malicious prosecution claim, including "life, liberty, property," or the violation of "another constitutional right"). In line with the elements of that common law tort, these courts thus routinely required the plaintiffs bringing the constitutional variant of the tort to show two things. They had to show both that the prosecutions that they were challenging had been pursued in the absence of law enforcement having had any probable cause to pursue them and that the prosecutions ultimately had been terminated in favor of the plaintiffs. See Restatement (Second) of Torts § 653 (providing the elements of common law malicious prosecution).
There was an understandable logic to the strict requirement that, to make out a constitutional claim for malicious prosecution, the plaintiff had to show both that there was no real evidence of probable cause at the outset and that the prosecution had been terminated in the plaintiff's favor at the close. The gravamen of the constitutional claim was the utter baselessness of the prosecution itself -- not any detention that the plaintiff had been made to endure in the pre-trial period. That seizure -- like the hit to the plaintiff's reputation -- may have inflicted damage for which recovery could be sought. But, that damage was not itself either the source of the constitutional violation or the basis for the constitutional claim.
Thus, the thinking went, if there were evidence of the defendant's criminal activity at the outset -- or, if the defendant's crime could be proven at the close -- then the constitutional claim for malicious prosecution could not succeed. There would be no ground for concluding in such a case that the prosecution had been so baseless as to violate the defendant's substantive due process rights. By contrast, if the plaintiff could show that law enforcement had fabricated the evidence of criminal activity from the get-go and that the prosecution failed at the end, then the constitutional claim for malicious prosecution would be viable.
The inclusion of these two elements of the constitutional tort of malicious prosecution -- the one concerning probable cause and the one concerning favorable termination -- made sense for another reason. Insofar as the federal constitutional guarantee of substantive due process itself barred such baseless prosecutions, it would have been surprising if that guarantee imposed such a bar even in cases in which *606 the longstanding common law variant of the tort did not.
B.
Albright changed the legal landscape quite significantly. It did not do so by suggesting that -- insofar as the substantive due process guarantee barred baseless prosecutions -- the requirement that plaintiffs prove either the no-probable-cause element or the favorable-termination element was problematic. See Albright, 510 U.S. at 273-74, 114 S.Ct. 807. Albright instead asked the logically prior question. Did substantive due process really render such a start-to-finish baseless prosecution itself unconstitutional? Albright concluded that, with respect to that question, the answer was, "No." Id. at 271, 114 S.Ct. 807.
Albright's reasoning reflected a concern about expanding the scope of substantive due process. See id. at 271-74, 114 S.Ct. 807. Precisely because the Court relied on that particular line of logic, however, it provided no reason to think that there was a similar constitutional problem with permitting plaintiffs to recover damages for the harm that they suffered in consequence of their pre-trial detention -- even if it had been effected pursuant to legal process in the course of a prosecution -- under a Fourth Amendment-based, unlawful seizure theory. Id. A constitutional claim of that type raised none of the concerns about expansive notions of substantive due process that had led the Court in Albright to reject the constitutional tort of malicious prosecution more generally.
Albright did not actually go so far as to hold that such detention-focused, Fourth Amendment-based claims were viable. See ids="231967" index="248" url="https://cite.case.law/us/510/266/">id. at 274-75, 114 S.Ct. 807. But, in the wake of Albright, a majority of the circuits, including our own in Hernandez-Cuevas v. Taylor, 723 F.3d 91 (1st Cir. 2013), took up the perceived invitation from the Court to recognize this more limited species of the broader constitutional tort of malicious prosecution that Albright had rejected. See Hernandez-Cuevas, 723 F.3d at 99 (collecting cases).
These lower appellate courts held that plaintiffs could bring what these courts continued to refer to as a "malicious prosecution" claim under the Constitution -- and thus, under § 1983 or Bivens-- so long as that claim was based on the Fourth Amendment and thus so long as that claim targeted an actual seizure of the plaintiff. Id. (recognizing a Fourth Amendment claim and collecting cases from other circuits doing the same). These courts thus shifted the focus away from the question of whether the prosecution itself was so baseless that it offended substantive due process to the question of whether the detention that resulted from the prosecution violated the Fourth Amendment because it led to an unconstitutional seizure.
These courts, though, still had to determine what the elements of this newly conceived Fourth Amendment-based malicious prosecution constitutional tort claim would be. See id. (describing circuit split regarding the elements of such a claim). And, articulating an answer proved to be tricky.
We offered our answer in Hernandez-Cuevas. Id. at 100-01. We characterized the constitutional claim itself -- as most courts did -- as one for "malicious prosecution[.]" Id. at 101. But, we made clear that the plaintiff would not necessarily need to prove the elements of the common law variant of that tort to make such a claim. Id. at 100-01. Instead, we made clear that it was possible that the constitutional version of the claim (now understood to be premised on the Fourth Amendment's protection against unreasonable seizure) might require a different showing. Id.
*607 Ultimately, and presciently, we held that the elements of this type of constitutional tort of malicious prosecution were not dictated by the elements of the common law malicious prosecution analogue. Id. For that reason, we did not adopt wholesale the "malice" element that was part of the common law tort of malicious prosecution. Id. But, we still did appear to require as elements of the Fourth Amendment-based constitutional tort the two notable ones from the old pre- Albright substantive due process-based malicious prosecution claim that I have described above. We determined that such a constitutional tort claim required the plaintiff to show the following elements: "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Id. (citing Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) ).
Thus, taken literally, Hernandez-Cuevas describes the elements of this Fourth Amendment-based malicious prosecution claim in a way that makes the existence of actual (and sufficiently substantial) evidence that the plaintiff committed the crime fatal to a Fourth Amendment-based tort claim challenging a pre-trial detention that has been carried out pursuant to legal process. See ids="5869795" index="262" url="https://cite.case.law/f3d/703/636/#p647">id. Such evidence would appear to make it impossible for the plaintiff to show that the detention was carried out in the absence of the requisite probable cause. Hernandez-Cuevas also makes a favorable termination of the prosecution critical to the plaintiff's ability to recover for the harm caused by that detention. Id.
C.
This precedential review brings us, then, to the conduct by law enforcement that Pagán alleges occurred in this case. That conduct occurred after we decided Hernandez-Cuevas, which is no doubt why Pagán relies on Hernandez-Cuevas in arguing that he has stated a claim for damages. But, given our statement of the necessary elements of the Fourth Amendment-based malicious prosecution claim in that precedent, I agree with the majority that Pagán has failed to make the case that he has alleged a violation of clearly established law.
Pagán's complaint -- unlike the one in Hernandez-Cuevas itself, 723 F.3d at 95 -- challenges a pre-trial seizure that was based on a finding of probable cause by a magistrate judge that was premised on real and substantial (rather than fabricated) evidence of his criminal activity. To be sure, Pagán does challenge the lawfulness of the means by which law enforcement acquired that evidence -- and the misrepresentations that law enforcement made to the magistrate judge about those means. He does not assert, though, that the evidence itself was fabricated by law enforcement, as was alleged to have been the case in Hernandez-Cuevas, 723 F.3d at 95, or even that the evidence was on its face so patently weak that it was obviously insufficient to make out a finding of probable cause.
Nor does Pagán develop any argument as to how, notwithstanding the existence of real and substantial evidence of his criminal conduct, his claim is nonetheless one that clearly satisfies the probable cause element that Hernandez-Cuevas appears to have established. See ids="4065880" index="266" url="https://cite.case.law/f3d/723/91/#p101">id. at 100-01. Nor, moreover, does he even develop any argument as to why his claim does not need to be of that kind in order for it to survive the second step of the qualified immunity inquiry.
Thus, I agree with the majority that -- at least given the arguments that Pagán makes to us -- Hernandez-Cuevas poses an insuperable obstacle to his claim going forward. Accordingly, I join the majority's *608 holding at step two of the qualified immunity inquiry. Panel Op. 601-02.
There has, however, been yet another change in the relevant legal landscape, although this one occurred only after the initiation of Pagán's case. It thus does little to help Pagán meet the "clearly established law" prong of the qualified immunity inquiry, at least given the arguments that he makes to us. Nevertheless, this change does suggest to me that it would be a mistake to make too much of the obstacle that seemingly stands in the way of Pagán's claim with respect to similar claims that may be brought by others. Thus, in the remainder of my analysis, I explain my reasons for so concluding.
III.
The post- Hernandez-Cuevas legal change that I have in mind was brought about by the Supreme Court's recent decision in Manuel v. City of Joliet, III., --- U.S. ----, 137 S.Ct. 911, 197 L.Ed.2d 312 (2017). An implication that I draw from Manuel is that it does not make sense to continue to treat a Fourth Amendment-based claim for damages resulting from an unlawful seizure effected via pre-trial detention of a criminal defendant as if it were one for "malicious prosecution." A further implication that I draw from Manuel is that we are not obliged to borrow the elements from the common law -- or substantive due process -- tort of malicious prosecution when considering a Fourth Amendment-based claim that is brought for damages for the harm caused by such pre-trial detention.
To support the first of these conclusions, I note that the Supreme Court granted certiorari in Manuel on the question of "whether an individual's Fourth Amendment right to be free from unreasonable seizure continues beyond legal process so as to allow a malicious prosecution claim based upon the Fourth Amendment." Id. at 923 (Alito, J., dissenting) (emphasis in original). Yet, the Court held, "Manuel may challenge his pretrial detention on the ground that it violated the Fourth Amendment," even though it occurred "after the start of 'legal process[,]' " id. at 914 (majority opinion), without ever referring to such a claim as one for "malicious prosecution[,]" see ids="12609962" index="271" url="https://cite.case.law/s-ct/137/911/#p919">id. at 914-22.
Moreover, Manuel remanded to the Seventh Circuit to consider "the elements of, or rules applicable to" Manuel's claim, without purporting to set forth the elements from the traditional tort of malicious prosecution or to answer the timeliness question by applying the special accrual rules from the common law variant of the malicious prosecution tort. Id. at 922. In fact, even though Justice Alito in dissent asserted that the elements of common law malicious prosecution are entirely inconsistent with a Fourth Amendment claim like Manuel's, id. at 925-26 (Alito, J., dissenting), the majority did not attempt to rebut these arguments at all in permitting the claim to go forward, see id. at 912-22 (majority opinion).
In addition to the fact that Manuel eschews the "malicious prosecution" label, it also supports the implication that I draw from it that courts need to examine claims such as the one that Pagán brings through the lens of the Fourth Amendment rather than through the lens of the common law tort of malicious prosecution. Although Manuel expressly encourages us to "look first to the common law of torts" to define the elements of a § 1983 claim, it explains that those "[c]ommon-law principles are meant to guide rather than to control the *609 definition of § 1983 claims,[17] serving 'more as a source of inspired examples than of prefabricated components.' " Id. at 920-21 (quoting Hartman v. Moore, 547 U.S. 250, 258, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) ). The Court then proceeds to admonish us to "closely attend to the values and purposes of the constitutional right at issue" when "applying, selecting among, or adjusting common law-approaches." Id. at 921.
Thus, it is with this fresh guidance from Manuel in mind that I now consider whether the Fourth Amendment claim that Manuel recognizes encompasses a claim like Pagán's. For the reasons set forth below, I conclude that it does. I do so despite the fact that the evidence that the magistrate judge relied upon to issue the arrest warrant that permitted Pagán's seizure was both real and sufficient to establish the requisite probable cause. I do so, as well, even though the analogous evidence of probable cause in Manuel allegedly had been fabricated by law enforcement, just as it allegedly had been fabricated in Hernandez-Cuevas.
A.
As Manuel recognizes, a claim of the kind that Pagán brings is necessarily predicated on a challenge to whether the seizure at issue comports with the Fourth Amendment. The focus, therefore, should be on discerning the elements of the constitutional tort that logically relate to the constitutional right -- namely, the Fourth Amendment prohibition against unreasonable seizures -- on which the tort is grounded. Id. at 920-21.
Such a focus, however, makes it mysterious to me why we would continue to define the elements of the claim as Hernandez-Cuevas-- at least at first blush -- presently does. See Hernandez-Cuevas, 723 F.3d at 100-01. I start with the favorable termination element, which Hernandez-Cuevas retains from the old, pre- Albright constitutional tort of malicious prosecution based on the common law tort. Compare id.,with Restatement (Second) of Torts § 653. I then consider the element concerning probable cause, which Hernandez-Cuevas retains from the earlier version of the tort as well.
With respect to making favorable termination an element of the Fourth Amendment-based tort, such as the one that Pagán brings, I see little reason to retain that element post- Manuel. The termination of the prosecution -- even if unfavorable to the defendant -- cannot render the pre-trial seizure of the defendant constitutional if that seizure was unlawful from the inception. No matter how the prosecution ends -- including if it ends in a conviction -- the defendant still has a right for there to have been a constitutionally valid basis for the pre-trial detention that he endured. Thus, the favorable termination element -- an artifact of the old, no longer viable substantive due process-based malicious prosecution constitutional tort -- seems to me to be an anachronism. Accord Manuel, 137 S.Ct. at 925-26 (Alito, J., dissenting).
I reach the same conclusion with respect to the element concerning probable cause -- at least if we understand that element to require a showing that the magistrate judge's finding of probable cause that grounded the seizure was predicated on evidence that law enforcement fabricated or that was so patently weak that it could not plausibly support a probable cause finding. I add this caveat about whether *610 Hernandez-Cuevas actually meant to establish a definitive holding about the requirements of the probable cause element for the following reason. In Hernandez-Cuevas, the only evidence of probable cause had -- allegedly -- been fabricated by law enforcement. 723 F.3d at 95. Thus, we had no occasion there to decide -- definitively -- whether the probable cause requirement that we set forth was intended to require the plaintiff to show that there was simply no real evidence sufficient to establish probable cause at all. It was enough to conclude that the claim could go forward when the plaintiff had made that showing by virtue of the allegations concerning fabrication.
But, insofar as Hernandez-Cuevas does establish a probable cause element of a strict kind, I do not see why it is right to do so given the recent guidance that we have received from Manuel. Here, too, my concern is that the element is being defined with reference to the old, now-rejected malicious prosecution constitutional tort, rather than with reference to the Fourth Amendment-based tort, which is the only variant of that tort that remains viable after Manuel.
There is a logic to requiring the prosecution to have been based on real evidence of a crime at the outset if the constitutional claim targets the bringing of the prosecution itself. There is no similar logic, though, to imposing that requirement if the constitutional claim challenges only the seizure that occurred in connection with that prosecution.
To see why, we need only follow Manuel's admonition that, in discerning the elements of this Fourth Amendment-based tort, we must keep our eye on the underlying constitutional right. Manuel, 137 S.Ct. at 920-21. A consideration of that right, as I shall next explain, reveals that even real and substantial evidence of probable cause -- such as is present in Pagán's case -- may be insufficient to render an arrest warrant that is issued based on that evidence one that law enforcement may constitutionally rely upon to carry out the ensuing seizure.
B.
The Fourth Amendment provides that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Importantly, for present purposes, the Supreme Court has explained that the Amendment's protection consists of more than the requirement of probable cause. Rather, the Court has explained, "[t]he bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." Franks v. Delaware, 438 U.S. 154, 164, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
Further, the Court emphasized in Franks that "it is the magistrate who must determine independently whether there is probable cause" in a case where a warrant would be required and thus "it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately reckless false statement, were to stand beyond impeachment." Id. at 165, 98 S.Ct. 2674 (emphasis added). And, finally, Franks applies equally to arrest warrants issued by a magistrate judge pursuant to a criminal complaint as to search warrants. See Burke v. Town of Walpole, 405 F.3d 66, 82 (1st Cir. 2005).
Thus, a showing of probable cause is not the only prerequisite to a lawful seizure of a criminal defendant -- by reason of his suspected criminal activity -- under the *611 Fourth Amendment. Rather, per Franks, the probable cause showing is necessary but not sufficient, because, in many circumstances, a defendant's seizure may be constitutionally carried out only pursuant to an arrest warrant issued by a neutral magistrate judge. Franks, 438 U.S. at 164, 98 S.Ct. 2674.
Moreover, in those circumstances in which a warrant is required, the seizure does not necessarily comply with the Fourth Amendment simply because law enforcement carried it out pursuant to such a warrant. Rather, even in that event, the seizure may be challenged on Fourth Amendment grounds, as Franks shows, too.
To be sure, even a defective arrest warrant -- say, one resting on evidence too slight to establish probable cause -- may legitimate the conduct of officers who, in good faith, effect an arrest pursuant to that defective warrant. The good faith exception to the warrant requirement ensures this outcome. United States v. Leon, 468 U.S. 897, 920-23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ; see also United States v. Barnes, 895 F.3d 1194, 1201-02 (9th Cir. 2018) (applying Leon's good faith exception to an arrest warrant acquired via criminal complaint). But, there are cases in which law enforcement may not rely on an arrest warrant in good faith, and those cases include ones in which "the magistrate ... in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Leon, 468 U.S. at 923, 104 S.Ct. 3405 (citing Franks, 438 U.S. at 154, 98 S.Ct. 2674 ).
The logic underlying the precedent that limits the good faith exception is clear enough. An arrest warrant can legitimate a seizure premised on a warrant that in fact lacks probable cause. An arrest warrant cannot legitimate a seizure under the Fourth Amendment if law enforcement precluded the magistrate judge from performing the neutral gatekeeping role required of it by the Warrant Clause. In such circumstances, the warrant cannot provide a good faith basis for law enforcement to think that the seizure was lawful due to the trick on the magistrate judge that was used to secure the warrant.
Against this legal background, Hernandez-Cuevas and Manuel were hardly innovative in permitting Fourth Amendment-based damages claims to proceed where the plaintiff alleged that his pre-trial seizure had been carried out pursuant to an arrest warrant that the magistrate judge issued based on evidence of probable cause that law enforcement had fabricated. Manuel, 137 S.Ct. at 914-15, 920 n.8 ; Hernandez-Cuevas, 723 F.3d at 102-03. In such circumstances, the warrant clearly could not legitimate the seizure, given the trick that law enforcement had performed on the magistrate judge that led the magistrate judge to issue the warrant.
The question for our purposes, though, is not quite so easily answered as it was in those cases. The trickery in Manuel and Hernandez-Cuevas led the magistrate judge to issue a warrant based on evidence of probable cause that simply did not exist and that law enforcement knew from the outset did not exist. In a case like Pagán's, by contrast, law enforcement has not tricked the magistrate judge into believing that there was evidence of probable cause when there in fact was none. There was such evidence all along. Rather, law enforcement has -- allegedly -- merely tricked the magistrate judge into believing that the evidence of probable cause was constitutionally acquired when law enforcement knew it was not.
As I read our precedent, however, where officers trick the magistrate judge *612 about the unlawfully acquired nature of the evidence that they have put forward to establish probable cause, the resulting warrant is no less premised on a lie or reckless half-truth that materially taints the magistrate judge's capacity to perform the constitutionally prescribed gatekeeping role than when the deceit concerns the existence of the evidence. Thus, law enforcement's ability to rely on that warrant in good faith to justify the seizure may be limited just as it would be in a case in which the lie or reckless untruth does concern the evidence's existence.
Specifically, we have explained that a warrant -- even if predicated on evidence that was itself real -- may not be relied upon by law enforcement, if it had been secured by deliberate lies or reckless omissions that misled the magistrate judge into thinking that critical evidence of probable cause had been acquired constitutionally or with a good faith belief that it had been. See United States v. Diehl, 276 F.3d 32, 43 (1st Cir. 2002). We have done so, presumably, on the understanding that a fully informed magistrate judge might have exercised its discretion to decline to issue the warrant had it known that the evidence of probable cause had been secured only through law enforcement conduct that was not constitutional or that was not undertaken in good faith that it was. In fact, our precedent, like the precedent of other circuits, makes clear that a magistrate judge may decline to issue a warrant when the evidence forming the basis for probable cause is known to have been acquired in such concerning circumstances. See United States v. Bain, 874 F.3d 1, 21-22 (1st Cir. 2017) (collecting cases).[18] Thus, lies or reckless omissions that hide facts that would reveal such problematic means of acquiring such evidence -- like the lies alleged by Pagán -- interfere with the magistrate judge's constitutional role as a gatekeeper. See Franks, 438 U.S. at 155-56, 98 S.Ct. 2674.
In Bain, for example, we held that a search warrant could be issued based on unconstitutionally acquired evidence of probable cause obtained in a prior search if that prior search had been conducted on a "good faith" belief that it was conducted constitutionally. Bain, 874 F.3d at 22.[19] In doing so, we reaffirmed our reasoning in Diehl. There, we explained that officers would be barred from relying on a search warrant that a magistrate judge issued based on evidence acquired from a prior warrantless search, if the application for the follow-on search warrant omitted facts that the defendant alleged would have shown the prior search to have been undertaken not merely unlawfully but in "such bad faith to preclude a warrant." Diehl, 276 F.3d at 43 (citing United States v. Reilly, 76 F.3d 1271, 1280 (2d Cir. 1996) (barring reliance on a warrant in such circumstances (citing Franks, 438 U.S. at 155-56, 98 S.Ct. 2674 ) ) ).
Franks itself, I should add, supports the same conclusion. It concerned misrepresentations by officers about whether certain statements -- necessary for a finding *613 of probable cause by the magistrate judge -- had been made to officers in violation of the defendant's rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Franks, 438 U.S. at 156-57, 98 S.Ct. 2674. Franks itself, in other words, precluded law enforcement from relying on a search warrant that had been secured through misrepresentations to the magistrate judge, even though the evidence of probable cause on which the magistrate judge relied in issuing the warrant was real (though, I suppose, arguably unreliable). Id. And, of course, we have held Franks to apply equally to the acquisition of arrest warrants by criminal complaint. See Burke, 405 F.3d at 82.
Thus, the following would appear to be clear, at least under our precedent. When law enforcement intentionally or recklessly makes false statements to a magistrate judge about the constitutional or good faith means by which law enforcement obtained the evidence that supplies the basis for finding the probable cause necessary to justify the warrant that would permit a pre-trial seizure of a criminal defendant, such lies -- or reckless omissions -- undermine the magistrate judge's ability to perform its constitutional role under the Warrant Clause. See Franks, 438 U.S. at 155-56, 98 S.Ct. 2674. Such intentionally false statements or reckless omissions thus preclude law enforcement officers from relying in good faith on the arrest warrant that is then issued (at least when the officers know of the lies or reckless omissions). And thus, under our precedent, such lies or reckless omissions prevent that warrant from legitimating the seizure that is carried out in reliance on it, Leon, 468 U.S. at 923, 104 S.Ct. 3405 (citing Franks, 438 U.S. at 154, 98 S.Ct. 2674 ), notwithstanding that the lies or reckless falsehoods concerned only the means by which the evidence of probable cause had been acquired and not the existence of the evidence itself.
C.
Against this legal backdrop, I do not see why a plaintiff should be barred from seeking damages for his pre-trial seizure, simply because he can show that the lies or the reckless omissions that law enforcement told the magistrate judge to secure the arrest warrant concerned only how real evidence had been acquired and not whether such real evidence existed. The deceit still stripped the magistrate judge of the ability to perform its constitutionally prescribed gatekeeping role. The deceit did so by stripping the magistrate judge of the opportunity to deny law enforcement the ability to exploit the unconstitutional conduct it used to acquire the evidence that supplies the sole basis for procuring the warrant that would permit a defendant to be seized. Under our precedent, therefore, the seizure would appear to be no less unconstitutional -- insofar as the warrant is necessary in the first place -- for having been carried out pursuant to unconstitutional trickery of that comparatively subtle (but still egregious) sort. Cf. Manuel, 137 S.Ct. at 918 (noting that the Fourth Amendment's prohibition on "government officials ... detaining a person in the absence of probable cause" may "also occur when legal process itself goes wrong").
Nor would such a conclusion be unique. There is some precedent that recognizes that the old "probable cause" element -- as developed in connection with the pre- Albright constitutional tort of malicious prosecution -- should not be construed to require a showing that the finding of probable cause rested on fake rather than real evidence. For example, in Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003), the Second Circuit considered a case in which the officers lied repeatedly, both to the *614 grand jury and at a suppression hearing, about whether key testimony by the defendant had been given in violation of Miranda. Boyd, 336 F.3d at 74. There was no contention in Boyd that the criminal defendant's statements were false, only that officers knew them to be inadmissible at the eventual trial. Id. Yet, rather than consider only whether there was real evidence of probable cause to believe Boyd had committed a crime -- as was the standard, pre- Albright inquiry -- the Second Circuit expanded the probable cause inquiry to allow that element to be satisfied even when there was real evidence of probable cause. Id. at 74 n.7.
Thus, even before Manuel, at least one circuit appeared to be grappling with the apparent mismatch between the elements of existing, substantive due process malicious prosecution claims and the new Fourth Amendment-based claim challenging the seizure alone. In my view, that circuit was right to be doing so.
Consider a case in which law enforcement bribed the magistrate judge to rule its way in assessing whether debatable but real evidence -- say, officer testimony in which credibility determinations are paramount -- could suffice to permit the seizure. The victim of that misconduct should not be barred from seeking recompense for the harm that he has endured from the resulting detention. There, the evidence of probable cause itself would not have been fabricated. Nor might it even have been so patently weak as to preclude an officer from relying in good faith on a warrant based on it. Nevertheless, the detainee would still have been deprived of his Fourth Amendment right to have a neutral magistrate judge -- rather than an interested executive actor -- assess whether the detention was justified.[20]
The situation, it seems to me, is no different if the magistrate judge was misled into believing that the evidence of probable cause had been acquired consensually rather than pursuant to a ruse that the officers knew to be unconstitutionally coercive. Such deceit -- even if it inheres only in a reckless omission, rather than a deliberate untruth, and even if it concerns the means of acquisition rather than the evidence's actual existence -- prevents the magistrate judge from performing its constitutionally contemplated role as a neutral adjudicator of whether detention is warranted. See Franks, 438 U.S. at 165, 98 S.Ct. 2674. That is so, under our precedent, notwithstanding that this deceit concerns only how law enforcement acquired the evidence of probable cause and not whether the evidence exists.
D.
Allowing claims like Pagán's to proceed would not mean that constitutional tort suits could be used to attack arrests based on warrants as a general matter. Leon still shields officers where they rely on warrants in good faith, except in very limited circumstances, such as Franks violations in securing the warrant. Leon, 468 U.S. at 923, 104 S.Ct. 3405 (citing Franks, 438 U.S. at 154, 98 S.Ct. 2674 ). But, when the officers' reliance on that warrant is in bad *615 faith -- such as when the officer who participates in the seizure is also responsible for the reckless or deliberate misrepresentations that led to the warrant's tainted issuance -- I do not see why the specter of a damages judgment should not be in the offing.
This approach is also entirely consistent with the prevailing view that the exclusionary rule does not apply to civil proceedings. See Lingo v. City of Salem, 832 F.3d 953, 960 (9th Cir. 2016) ; Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999). Under this approach, the inquiry is not whether the evidence shows that there was probable cause to believe the plaintiff had committed a crime. The inquiry is whether law enforcement precluded the magistrate judge from performing its constitutionally assigned gatekeeping role through deliberate lies or reckless omissions about the means used to acquire the evidence of probable cause. Thus, as the Fourth Amendment-based tort claim does not depend on guilt or innocence or on whether the improperly procured evidence was real or fake, the plaintiff does not need to exclude the evidence of probable cause to win. The plaintiff needs only to put forward facts sufficient to show a Franks violation.
In addition, in all § 1983 cases and Bivens actions, plaintiffs must show some causation between the defendant's conduct, the constitutional violation, and the plaintiff's injury. See Martinez v. California, 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (holding that the language of § 1983 imposes a proximate cause requirement on claims under that statute); Hernandez-Cuevas, 723 F.3d at 100 (requiring a showing of causation in Bivens actions). As we explained in Hernandez-Cuevas, "in most cases, the neutral magistrate judge's determination that probable cause exists for the individual's arrest is an intervening act that could disrupt any argument that the defendant officer had caused the unlawful seizure." Id. at 100 (citing Sanchez v. Pereira-Castillo, 590 F.3d 31, 50 (1st Cir. 2009) ("We employ common law tort principles when conducting inquiries into causation under § 1983.") ). We noted, too, that this "causation problem" can be overcome only if it is clear that law enforcement officers were "responsible for [the plaintiff's] continued, unreasonable pretrial detention," including by "fail[ing] to disclose exculpatory evidence" or "l[ying] to or misle[ading] the prosecutors." Id.
IV.
For these reasons, I conclude that Pagán has sufficiently stated a claim for damages under the Fourth Amendment -- save, that is, for the qualified immunity defense that bars that claim from surviving here. The lack of clarity in our precedent or the Supreme Court's as to the elements of such a claim precludes him from overcoming that defense -- at least given his arguments to us. I recognize that this caveat concerning qualified immunity is a rather significant one -- and not only in Pagán's case. The defense of qualified immunity is usually invoked in cases like this one, just as it has been invoked here. A plaintiff who loses at the second step of the qualified immunity inquiry is no better off than one who loses at the first step.
Still, it is important to address the first step of the qualified immunity inquiry. That step is certainly relevant in cases in which the defense of qualified immunity is not properly invoked -- and, in fact, it was not invoked in either Hernandez-Cuevas or Manuel. Hernandez-Cuevas, 723 F.3d 91, 97 n.7 ; see generally Manuel, 137 S.Ct. at 914-22.
With respect to that step, moreover, it is clear to me that, in light of Manuel, it is a mistake to attempt to fashion a half-fish, *616 half-fowl, hybrid malicious prosecution/Fourth Amendment based tort. I thus do not see how, post- Manuel, we could continue to justify treating a Fourth Amendment-based claim such as Pagán brings here -- targeting, as it does, only the seizure and not the prosecution -- as a species of the old malicious prosecution tort. Rather, we must understand that tort for what it is -- a Fourth Amendment-based challenge to pre-trial detention that targets law enforcement's efforts to circumvent the warrant requirement through lies or reckless omissions that conceal from the magistrate judge facts material to its ability to perform its constitutionally assigned role.
For that reason, I think it important to lay out this analysis here. That way, in a subsequent case we will be better positioned to resolve definitively how Manuel bears on -- and, in my view, supersedes -- two of the elements of the constitutional tort that we described in Hernandez-Cuevas: the ones concerning favorable termination and probable cause. See Hernandez-Cuevas, 723 F.3d at 100-01.
Unless we at some point address step one of the qualified immunity inquiry in a case involving such a claim, or otherwise definitively define the elements of this constitutional tort post- Manuel, we will be at risk of leaving the law unclear in key respects. In consequence, we will be permitting our pre- Manuel case law to exert an outsized influence on the types of remedies that may be available to those who have been the victims of unlawful law enforcement trickery of the kind that the Fourth Amendment quite clearly condemns.
Finally, and relatedly, I would not rule out the possibility that, even before our court does provide clarity to the doctrine in this area, a plaintiff might be able to develop an argument -- which Pagán has not attempted to do here -- as to why such a claim might be viable even in the face of a qualified immunity defense. Our Fourth Amendment precedents in Bain and Diehl clearly establish that law enforcement officers -- per Franks -- may not rely on warrants in good faith that are the product of their own reckless half-truths about the constitutionality (or the officers' good faith belief in the constitutionality) of the means used to acquire the evidence of probable cause on which the magistrate judge relied in issuing the warrant. Nor does Hernandez-Cuevas suggest otherwise. Rather, Hernandez-Cuevas at most creates doubt about the content of one element of the constitutional tort suit that may be brought to recoup damages for the harm caused by the pre-trial detention that results from such clearly unconstitutional law enforcement conduct.
Given that qualified immunity is intended to serve a practical, functional purpose, I am not certain that law enforcement officers should be immune from damages for engaging in conduct that, at the time it was undertaken, was clearly unconstitutional under our precedent, simply because we had not also as of that time clearly described an element of the constitutional tort that may be brought to recover damages for the harm caused by such conduct. We have no occasion, however, to consider such a refined question of qualified immunity law here. I thus leave it for another day.
For present purposes, it is enough to lay out the lines along which the relevant doctrine may be reconstructed. Doing so is the first step along the route to ensuring that this body of doctrine is freed from the lingering influence of the pre- Albright tort of malicious prosecution and thus may reflect more fully Manuel's suggestion that we "closely attend to the values and purposes of the constitutional right at issue"
*617 when "applying, selecting among, or adjusting common law-approaches." Manuel, 137 S.Ct. at 921.

At the end of this five-day period, there was a preliminary hearing to determine whether there was "probable cause to believe an offense ha[d] been committed and that the defendant committed it." Fed. R. Crim. P. 5.1(e). Pagán does not allege in his complaint what evidence was put forward at this hearing. Accordingly, he has not met his burden to show that his pre-trial detention that ensued in the wake of that hearing violated his constitutional right to be free from unreasonable seizures.

We look to the common law for guidance in Bivens cases, as well. See Hernandez-Cuevas, 723 F.3d at 101 (citing Albright, 510 U.S. at 277 n.1, 114 S.Ct. 807 (Ginsburg, J., concurring) ).

The only two circuits to take a different approach have adopted a per se rule precluding a magistrate judge from relying on unlawfully acquired evidence when evaluating whether there is probable cause for a warrant to issue. See United States v. McGough, 412 F.3d 1232, 1239-40 (11th Cir. 2005) ; United States v. Wanless, 882 F.2d 1459, 1466-67 (9th Cir. 1989).

In that case, without deciding that it was the correct formulation of the test for "good faith," we applied the Eighth Circuit's formulation that the prior search must have been "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." Bain, 874 F.3d at 22 (quoting United States v. Hopkins, 824 F.3d 726, 733 (8th Cir. 2016) ).

I note in this regard that, although our review of a District Court's legal conclusions on a motion to suppress, "including its conclusion regarding the existence of probable cause, [is] de novo," United States v. Clark, 685 F.3d 72, 75 (1st Cir. 2012), we also afford "great deference" to "[a] magistrate's determination of probable cause[,]" ids="3901122" index="352" url="https://cite.case.law/f3d/685/72/#p75">id. at 78. This is especially so where the probable cause determination rests on factual findings or credibility determinations. Id. at 75, 78. Thus, such a bribe would appear to short-circuit the gatekeeping process, at least in a case in which the probable cause finding would itself depend on fact finding by the magistrate to which we would otherwise defer.